AMERICAN EXPRESS COMPANY *v.* UNITED STATES.

NATIONAL EXPRESS COMPANY *v.* SAME.

UNITED STATES EXPRESS COMPANY *v.* SAME.

WELLS, FARGO AND COMPANY *v.* SAME.

ADAMS EXPRESS COMPANY *v.* SAME.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF ILLINOIS.

Nos. 405, 406, 407, 408, 409. Argued November 10, 11, 1908.—Decided
February 23, 1909.

The purpose of the Elkins act is to require publication of tariff and
to prevent and prohibit all discrimination, and the issuing of express
franks falls within such prohibition.

Whether or not the issuing of express franks to officers and employés
of express companies and their families is prohibited by § 2 of the
Interstate Commerce Act of February 4, 1889, c. 104, 24 Stat. 379,
an injunction is authorized under § 3 of the Elkins act of February 19,
1903, c. 708, 32 Stat. 846, wherever a common carrier is engaged in the
carriage of passengers or freight at less than the published rate, and
by the Hepburn act of June 29, 1906, c. 3591, 34 Stat. 584, express
companies are brought within the act, and obliged to file and pub-
lish their rates.

The power of Congress over interstate transportation embraces all
manner of carriage whether gratuitous or otherwise; and, in the ab-
sence of express exceptions, the intention of Congress in enacting the
Elkins act was to prevent any departure whatever from published
rates.

The exceptions contained in the provision in § 1 of the Hepburn act of
June 29, 1906, c. 3591, 34 Stat. 584, allowing a common carrier to
issue passes for free transportation of passengers to certain classes
of persons cannot be extended to give express companies the right to
issue passes to the same classes of persons for transportation of mer-
chandise.

While a proviso may sometimes be construed as extending rather than
limiting legislation each statute must depend on its own terms, and

a proviso will be construed consistently with the legislation under consideration.

Where Congress has used plain and explicit language the only province of the courts is to give effect to the act as plainly expressed in its terms, and if the law is defective in not extending to one class of common carriers privileges extended to another, the remedy is in the hands of Congress and not of the courts.

THE facts are stated in the opinion.

*Mr. Lawrence Maxwell,* with whom *Mr. Lewis Cass Ledyard, Mr. Frank H. Platt, Mr. Carl A. de Gersdorf, Mr. W. W. Green* and *Mr. Charles W. Stockton* were on the brief, for appellant:

The custom of express companies to issue such passes as are herein in question was one of long standing and presumably known to Congress. There is no record of any protest against it to or by the Interstate Commerce Commission, or to Congress, nor any suggestion in any speech or report that it was supposed to be detrimental to the public interest, or that it was intended to be prohibited. There is no direct or express prohibition in the statute. On the contrary, the Interstate Commerce Act recognizes, and always has recognized that the granting of similar privileges to the officers and employés of railroad companies is consistent with sound public policy. See § 22 of the act. And § 1, as amended June 29, 1906, expressly exempts officers and employés of common carriers and their families, from the prohibition against free passenger transportation, and declares that the provision shall not prohibit the interchange of passes for officers, agents and employés of common carriers and their families. The same section declares that the term common carrier shall include express companies.

The reason for making these exemptions in favor of the employés of common carriers, and members of their families, is obvious. *Steamboat New World* v. *King,* 16 How. 469, 473; *Express Cases,* 117 U. S. 1; *B. & O. S, W. Ry. Co.* v. *Voigt,* 176 U. S. 498.

The proviso in § 1 for "the interchange of passes for the offi-

cers, agents and employés of common carriers, and their families," relates not only to passenger passes, but was evidently used as an introduction to an amendment offered after the bill was reported, for the purpose of extending the privilege of interchanging employés' passes to all common carriers subject to the act. If not it was unnecessary, for § 22 already covered the case of railroad passes for officers and employés.

As to the office of a proviso, see: *Georgia Banking Co.* v. *Smith*, 128 U. S. 174, 181; *Interstate Commerce Commission* v. *Baird*, 194 U. S. 25, 36, 37; *Chesapeake & Potomac Tel. Co.* v. *Manning*, 186 U. S. 238, 242; *Baggaley* v. *Pittsburg & Lake Superior Iron Co.*, 90 Fed. Rep. 638.

The failure to specifically mention express companies in § 22 does not operate to exclude them from the privilege of carrying the personal packages of their employés free or of exchanging employés' passes with other common carriers. That section is only illustrative and not exclusive. When that section was adopted express companies were not subject to the act and were therefore not named, but when they were brought in by the amendment of June 29, 1906, they came within the spirit and principle of § 22, and also within the spirit and principle of the proviso in § 1, that this provision should not prohibit the interchange of passes for the officers, agents and employés of common carriers, and their families, and within the spirit of the exemption in that section of the employés of railroad companies, and their families, from the prohibition against free passenger transportation. *Interstate Commerce Commission* v. *Baltimore & Ohio Railroad Company*, 145 U. S. 263, 278.

The Interstate Commerce Act does not purport to regulate all common carriers nor the carriers that are subject to the act in all of their relations. Section 6 declares that wherever the word "carrier" occurs in this act, it shall be held to mean common carrier. But the service which the express companies perform for the holders of employés' passes is not that of common carrier, because it is gratuitous, and the holder is required to assume all risk of loss or damage from whatever cause, to the

property carried. Schouler on Bailments (3d ed.), § 343; *Northern Pacific Ry. Co.* v. *Adams*, 192 U. S. 440; *Baltimore & Ohio S. W. Ry. Co.* v. *Voight*, 176 U. S. 498; *Quimby* v. *Boston & Maine R. R.*, 150 Massachusetts, 365.

The free carriage of persons or property may be a cloak for a rebate, or, under certain circumstances, an unlawful discrimination, in violation of the statute. But it is impossible for the Government to maintain that the issuing of employés' passes in good faith by express companies is unjust discrimination or unreasonable advantage, within the prohibition of the statute, in the face of its explicit declarations concerning passes issued by railroad companies to the same class of persons, for the same reasons, and under similar circumstances.

The case of the express companies is not substantially different from that of the railroad companies, for they are engaged in "a sort of partnership relation in carrying on a common carrier business," and the court should not make a distinction between them in the absence of clear and specific language in the statute, especially as the practice which the Circuit Court has enjoined was lawful at common law, is beneficial to the express companies in the conduct of their business, and is not injurious to the public.

The spirit as well as the letter of a statute must be respected, and where the whole context of the law demonstrates a particular intent in the legislature to effect a certain object, some degree of implication may be called in to aid that intent. *Durousseau* v. *United States*, 6 Cranch, 307, 314. See also *Paquete Habana*, 175 U. S. 677, 685; *Glover* v. *United States*, 164 U. S. 297; *C., N. O. & T. P. Ry. Co.* v. *Interstate Commerce Commission*, 162 U. S. 184, 197; *Interstate Commerce Commission* v. *Baltimore & Ohio Railroad Co.*, 43 Fed. Rep. 37.

*The Attorney General* and *The Solicitor General* for the United States:

Transportation under franks by express companies constitutes an unjust discrimination and subjects other shippers

to an unreasonable prejudice within the meaning of §§ 2 and 3 of the Interstate Commerce Act. The term "under substantially similar circumstances and conditions" in § 2 refers to the circumstances and conditions relating to the carrriage of the goods and not to the person of the sender. *Re Persons Free or at Reduced Rates by B. & M. R. R. Co.*, 5 I. C. C. Rep. 69; *Harvey* v. *Louisville & Nashville R. R. Co.*, 5 I. C. C. Rep. 153. The effect of the Interstate Commerce Act was to prohibit the granting of free transportation except as provided by § 22. *Ex parte Koehler*, 31 Fed. Rep. 315; *Re Charge to Grand Jury*; 66 Fed. Rep. 146.

The portions of §§ 2 and 3 relating to unjust discrimination were modeled from the English tariff act, and in construing them our courts have followed the interpretation of the English courts. *Interstate Comm. Comm.* v. *Baltimore & O. R. R. Co.*, 145 U. S. 263; *I. C. C.* v. *Alabama Midland R. Co.*, 168 U. S. 144; *Texas & Pacific Ry.* v. *I. C. C.*, 162 U. S. 197. Construing similar sections of the English act, the English courts have unanimously held that the differences in circumstances and conditions relate only to the carriage of goods and the nature and character of the service rendered by the shipper. *Gt. Western R. Co.* v. *Sutton*, L. R. & H. L. 226; *Denaby Main Colliery Co.* v. *Manchester Ry. Co.*, 11 App. Cas. 97.

The provisions of the Interstate Commerce Act require absolute and uniform adherence to the published schedule, and when a carrier has once established, published and filed a rate there can be no departure therefrom which has resulted to the extent of granting free transportation to their own officers and employés and to the officers and employés of other carriers in exchange for like favors from those carriers. See § 6, act June 29, 1906; § 1, Elkins act as amended by act June 29, 1906; *Texas & Pacific Ry. Co.* v. *Mugg*, 202 U. S. 242; *Texas & Pacific Ry. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426; *Armour Packing Co.* v. *United States*, 209 U. S. 56.

The only section of the Interstate Commerce Act which relates in terms to the carriage of property at free or reduced

rates is § 22, 25 Stat. 857, 862, and there is nothing in it which by any possible construction can be taken as covering the granting and interchanging of franks by the express companies charged here. The prohibition of the Elkins act is directed at discriminations and advantages of *every* kind. The original act of 1887 prohibited "unjust" discriminations and "undue" and "unreasonable" prejudices and disadvantages. The change in language in the amendatory legislation shows that Congress was intentionally broadening the scope of the prohibitions against the granting of advantages and discriminations. This is shown by the history of the interstate commerce legislation, and of the times and the evil which the amendatory legislation was intended to remedy. *N. Y., N. H. & H. R. R. Co.* v. *I. C. C.*, 200 U. S. 361; *Armour Packing Co.* v. *United States*, 209 U. S. 56. In passing the Elkins act Congress undoubtedly had in mind decisions of the courts holding that a criminal prosecution could not be maintained under a statute defining with such uncertainty the offense prohibited,—the original statute being so drawn as to leave for a determination of fact in every case whether or not the discrimination was an unjust one. *C. & N. W. Ry.* v. *Dey,* 35 Fed. Rep. 866; *Tozer* v. *United States,* 52 Fed. Rep. 917; *I. C. C.* v. *B. & O. R. R. Co.,* 145 U. S. 263. When Congress drew the provision requiring adherence to established rates and prohibiting the giving of advantages and discriminations, and omitted the words "undue," "unreasonable" and "unjust," its intention was to make the statute definite and certain and capable of practical enforcement, and to put an end to favoritism and all evasions.

There is no justification of the acts complained of to be found in the anti-pass provision of § 1 of the Hepburn act, 34 Stat. 584. That section relates manifestly to the transportation of persons alone and not to the carriage of goods. The term "frank," applies to the transportation of property, while "pass," applies to the transportation of passengers. The proviso manifestly related only to railroads, and when, later, express companies were included in the law, the proviso remained un-

changed and escaped attention; but this is not a manifestation of an intention on the part of Congress to extend the pass interchange to franks for the carriage of property beyond the plain meaning and limitation of all the rest of the section. This is a proviso which must be construed as carving something out of the previous enactment and restraining its generality. The exception carved out is an exception from a proviso which is limited to the transportation of passengers and therefore the same limitation must be placed upon the proviso. *United States* v. *Dickson*, 15 Pet. 141; *Savings Bank* v. *United States*, 19 Wall. 227; *Georgia Banking Co.* v. *Smith*, 128 U. S. 174; *White* v. *United States*, 191 U. S. 545.

Mr. JUSTICE DAY delivered the opinion of the court.

These cases are appeals from the Circuit Court of the United States for the Northern District of Illinois and were submitted upon oral argument and printed record and briefs in No. 405. They involve the same question and hence will be disposed of together. The petition was filed in the Circuit Court under the third section of the Elkins act, February 19, 1903, c. 708, 32 Stat. 847, providing for the institution of such suit whenever the Interstate Commerce Commission shall have reasonable grounds for believing that any common carrier is engaged in the carriage of passengers or freight traffic between given points at less than the published rates on file, or is granting any discrimination forbidden by law.

An injunction was issued restraining the express companies from "issuing any frank or other document for the free transportation of property to the following persons, to wit: the officers, agents, attorneys, and employés of said defendant and their respective families; the officers and employés of other express companies and their respective families; the officers and employés of any railroad or any other common carrier subject to the act to regulate commerce and its amendments, and their respective families; or to any of said persons; and from trans-

porting and forwarding for said persons above named or any of them, without demanding and receiving the lawful rate of payment therefor, any shipments of property subject to the provisions of said interstate commerce act and its amendments."

The facts are not seriously in dispute and were stipulated at the trial and show that it has been the custom of express companies for many years to issue franks such as are embraced in the injunction. These franks were not issued except to officers and employés of the companies and their families, and to the officers and employés of other express companies and transportation companies and members of their families, in exchange for passes issued by the latter companies to the officers and employés of the express companies. The franks provided that they should not be used for business packages or for transportation of extra heavy weight, money, bonds, jewelry, live stock, or business consignments, and only for the personal packages of the holder of such frank, he being required to assume all risk of loss or damage from whatever cause to property carried under the frank.

The question is, Does the Interstate Commerce law prohibit express companies from giving free transportation of personal packages to their officers and employés and members of their families, and to the officers of other transportation companies and members of their families in exchange for passes issued by the latter to the officers of the express companies? The Circuit Court held the affirmative of this proposition.

It is the contention of the Government that such transportation is forbidden by § 2 of the act of February 4, 1889, c. 104, 24 Stat. 379, forbidding the transportation of property or passengers subject to the provisions of the act for any person for a greater or less compensation for any service rendered or to be rendered, in the transportation of passengers or property, than it charges, demands, collects, or receives from any other person for doing for him the like service, and by § 3 of the same act (24 Stat. 379, 380) which makes it unlawful to give any undue preference or advantage to any particular persons or

locality, and by the provisions of the Elkins act hereafter quoted.

Without considering whether the case at bar is covered by the sections of the Interstate Commerce act referred to, an injunction is authorized under § 3 of the Elkins act; where a common carrier is engaged in the carriage of passengers or freight at less than the published rate on file, and we shall limit our attention to certain provisions of the Elkins law in this connection. Section 1 of the Elkins act provides (as amended by the Hepburn act, June 29, 1906, c. 3591, 34 Stat. 584, 587):

"The wilful failure upon the part of any carrier subject to said acts to file and publish the tariffs or rates and charges as required by said acts, or strictly to observe such tariffs until changed according to law, shall be a misdemeanor, and upon conviction thereof the corporation offending shall be subject to a fine of not less than one thousand dollars nor more than twenty thousand dollars for each offense.

\*     \*     \*     \*     \*     \*     \*     \*

"It shall be unlawful for any person, persons, or corporation to offer, grant, or give, or to solicit, accept, or receive any rebate, concession, or discrimination in respect of the transmission of any property in interstate or foreign commerce by any common carrier subject to said act to regulate commerce and the acts amendatory thereof, whereby any such property shall by any device whatever be transported at a less rate than that named in the tariffs published and filed by such carrier, as is required by said act to regulate commerce and the acts amendatory thereof, or whereby any other advantage is given or discrimination is practiced.

"Whenever any carrier files with the Interstate Commerce Commission or publishes a particular rate under the provisions of the act to regulate commerce or acts amendatory thereof, or participates in any rates so filed or published, that rate as against such carrier, its officers, or agents, in any prosecution begun under this act, shall be conclusively deemed to be the legal rate, and any departure from such rate, or any offer to

. depart therefrom, shall be deemed to be an offense under this
section of this act."

Section six of the Interstate Commerce act, as amended by
the same law, provides:

"Nor shall any carrier charge or demand, or collect or re-
ceive a greater or less or different compensation for such trans-.
portation of passengers or property, or for any service in con-
nection therewith, between the point named in such tariffs than
the rates, fares and charges which are specified in the tariff filed
and in effect at the time; nor shall any carrier refund or remit
in any manner or by any device any portion of the rates, fares,
and charges so specified, nor extend to any shipper or person
any privileges or facilities in the transportation of passengers
or property except such as are specified in such tariffs: *Pro-
vided*, That whenever the word 'carrier' occurs in this act it
shall be held to mean 'common carrier.'"

The amendment to the Interstate Commerce act by the act of
June 29, 1906, c. 3591, 34 Stat. 584, brought express companies
within the terms of the act. The express companies were there-
fore obliged to file and publish their rates for the transporta-
tion of property under § 6 of the Interstate Commerce act as
amended, and it is admitted in the record that they have done
so.

The provisions of the Elkins act to which we have referred
have been the subject of consideration in recent cases before
this court. *New York, New Haven & Hartford R. R. Co.* v.
*Interstate Commerce Commission*, 200 U. S. 361; *Armour Pack-
ing Co.* v. *United States*, 209 U. S. 56, 71. It is unnecessary to
repeat the discussion had in those cases as to the prior legis-
lation and the reasons of public policy which led up to the en-
actment of the sections of the Elkins act above quoted. It is
enough to say that it was the purpose of this law to require the
publication and posting of tariff rates, open to public inspection,
and at the service of all shippers alike; to prohibit and punish
secret departures from the published rates, and to prevent and
punish rebating, preferences and all acts of undue discrimina-

tion. As was said by Mr. Justice White, speaking for the court
in *New York, New Haven & Hartford R. R. Co.* v. *Interstate
Commerce Commission, supra:*

"The all-embracing prohibition against either directly or in-
directly charging less than the published rates shows that the
purpose of the statute was to make the prohibition applicable
to every method of dealing by a carrier by which the forbidden
result could be brought about. If the public purpose which the
statute was intended to accomplish be borne in mind, its mean-
ing becomes, if possible, clearer."

In view of the interpretation thus given to the act we think
it cannot be doubted that the transportation of property, such
as shown in this case, upon franks issued by the express com-
panies, is within the terms of the act. It permits those who
hold these franks to obtain the transportation of such property
as is covered thereby without compensation, or, if the trans-
portation has been paid, it is refunded to the shipper upon the
presentation of the frank. Within the terms used in the Elkins
act, such transportation enables one class of persons to obtain
transportation at a different and less rate than that named in
the published rates.

It is contended that such transportation is not within the
terms of the act, as it was not the purpose of Congress to regu-
late in these provisions gratuitous transportation, but the pur-
pose was to prevent discriminations, rebating and so forth,
where property has been carried by a common carrier for hire;
that it is a departure from the rates charged for that class of
transportation which is the evil to be remedied, and the only
one covered by the terms of the act. But the power of Congress
over interstate transportation embraces all manner of carriage
of that character—whether gratuitous or otherwise—and, in
the absence of express exceptions, we think it was the intention
of Congress to prevent a departure from the published rates
and schedules in any manner whatsoever. If this be not so, a
wide door is opened to favoritism in the carriage of property,
in the instances mentioned, free of charge.

If it is lawful, in view of the provisions of the Interstate Commerce act, to issue franks of the character under consideration in this case, then this right must be founded upon some exception incorporated in the act, and it is the contention of the learned counsel for the appellant that such exception is found in the proviso in § 1 of the Hepburn act. This section is given in part in the margin.[1]

---

[1] Act of June 29, 1906, c. 3591, 34 Stat. 584. The term "common carriers" as used in this act shall include express companies and sleeping car companies.

*        *        *        *        *        *        *        *

" No common carrier subject to the provisions of this Act, shall, after January first, nineteen hundred and seven, directly or indirectly, issue or give any interstate free ticket, free pass, or free transportation for passengers, except to its employés and their families, its officers, agents, surgeons, physicians, and attorneys at law; to ministers of religion, traveling secretaries of railroad Young Men's Christian Associations, inmates of hospitals and charitable and eleemosynary institutions, and persons exclusively engaged in charitable and eleemosynary work; to indigent, destitute and homeless persons, and to such persons when transported by charitable societies or hospitals, and the necessary agents employed in such transportation; to inmates of the National Homes or State Homes for Disabled Volunteer Soldiers, and of Soldiers' and Sailors' Homes, including those about to enter and those returning home after discharge, and boards of managers of such homes; to necessary caretakers of live stock, poultry, and fruit; to employés on sleeping cars, express cars, and to linemen of telegraph and telephone companies; to railway mail service employés, post office inspectors, customs inspectors and immigration inspectors; to newsboys on trains, baggage agents, witnesses attending any legal investigation in which the common carrier is interested, persons injured in wrecks and physicians and nurses attending such persons: *Provided,* That this provision shall not be construed to prohibit the interchange of passes for the officers, agents, and employés of common carriers, and their families; nor to prohibit any common carrier from carrying passengers free with the object of providing relief in cases of general epidemic, pestilence, or other calamitous visitation. Any common carrier violating this provision shall be deemed guilty of a misdemeanor, and for each offense, on conviction, shall pay to the United States a penalty of not less than one hundred dollars nor more than two thousand dollars, and any person, other than the persons excepted in this provision, who uses any such interstate free

As originally reported, this act did not apply to express companies. The section was originally framed with the intention of making a provision for railroad carriers. It is contended that the proviso brings common carriers within the exception of the act, and therefore necessarily includes the express companies. There is no doubt that a proviso has not infrequently been the means of introducing into a law independent legislation, notwithstanding it is the true office of a proviso to restrict the sense or make clear that which has gone before and which might be doubtful because of the generality of the language used. *United States* v. *Dickson*, 15 Pet. 141, 163. This court has had occasion to hold more than once that language used in provisos shows the legislative intention to bring in new matter rather than to limit or explain that which has gone before. *Georgia Banking Co.* v. *Smith*, 128 U. S. 174; *Interstate Commerce Commission* v. *Baird*, 194 U. S. 25, 36, 37.

While, therefore, a proviso may sometimes be construed as extending rather than limiting legislation, each statute must depend upon its own terms; and a proviso will be given such construction as is consistent with the legislation under construction.

Turning to § 1 of the Hepburn act, it is apparent that all that immediately precedes the proviso appertains to the carriage of passengers, for common carriers are forbidden to issue or give any free ticket, free pass or free transportation *for passengers*, except to its employés, etc. Until we come to the proviso, the act is clearly thus limited. It is then enacted that this provision, that is, the previous part of the enactment which refers only to the transportation of passengers, shall not be construed to prohibit the interchange of *passes* for the officers, agents and employés of common carriers and their families, or to prohibit any common carrier from *carrying passengers* free in certain cases.

While it is true the language here used has reference to com-

ticket, free pass, or free transportation, shall be subject to a like penalty."

mon carriers and by the terms of the Hepburn act express companies are within that description, yet the proviso is as clearly limited to the carriage of passengers and the interchange of passes for officers, agents and employés of common carriers and their families, as is the body of the section itself.

It is contended that this section if limited to the carriage of passengers was unnecessary in view of the concluding part of § 22 of the act of February 4, 1887, c. 104, 24 Stat. 379, 387, as amended by the acts of March 2, 1889, c. 382, 25 Stat. 855, 862, and February 8, 1895, c. 61, 28 Stat. 643, which provides: "Nothing in this act shall be construed to prevent railroads from giving free carriage to their own officers and employés, or to prevent the principal officers of any railroad company or companies from exchanging passes or tickets with other railroad companies for their officers and employés;" etc.

But we are to consider the language which Congress has used in passing a given law, and when the language is plain and explicit our only province is to give effect to the act as plainly expressed in its terms. We are clearly of the opinion that, without doing violence to the language used in § 1—including the proviso—its terms cannot be held to include the transportation of goods.

It is very likely that there is no substantial reason why Congress should not extend to express companies, their officers, agents and employés, corresponding privileges for free carriage of goods with those which are given to the officers, agents and employés of railroad companies in respect to transportation of persons, but—if the law is defective in this respect—the remedy must be applied by Congress and not by the courts.

We find no error in the decrees of the Circuit Court, and the same are

*Affirmed.*