## DUPLAN SILK CO. v. AMERICAN & FOREIGN MARINE INS. CO.

(Circuit Court of Appeals, Second Circuit. May 12, 1913.)

No. 226.

CARRIERS (§ 32*)—LOSS OF PROPERTY IN TRANSIT—ACTION BY SHIPPER ON INSURANCE POLICY.

The official classification published and filed by a railroad company fixed the value of raw silk carried under the uniform bill of lading at $1 per pound, and its schedules contained a provision that "the cost of insurance against marine risk will not be assumed by carriers unless specifically provided for in traiffs." Libelant shipped a consignment of raw silk under the uniform bill of lading, which limited the liability of the company in case of loss to $1 per pound, and the shipment was lost in a marine disaster to one of the carrier's boats. The railroad held a policy of insurance which by its terms covered the shipment for the benefit of the owner as well as the carrier. The latter paid the loss at the rate of $1 a pound, and libelant subsequently brought suit against the insurance company to recover the remainder of its loss. *Held*, that the suit could not be maintained, because in violation of section 6 of the Interstate Commerce Law (Act Feb. 4, 1887, c. 104, 24 Stat. 380), as amended by Act June 29, 1906, c. 3591, § 2, 34 Stat. 586 (U. S. Comp. St. Supp. 1911, p. 1289), prohibiting the carrier to give, or the shipper to receive or solicit, any rebate or concession from schedule rates.

[Ed. Note.—For other cases see Carriers, Cent. Dig. §§ 83–85; Dec. Dig. § 32.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Duplan Silk Company against the American & Foreign Marine Insurance Company. Decree for defendant, and libelant appeals. Affirmed.

Kneeland, Harison & Hewitt, of New York City (W. Harison, of New York City, of counsel), for appellant.

Harrington, Bigham & Englar, of New York City (D. R. Englar, of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. The libelant was the owner of 21 cases of raw silk which were lost in a marine disaster while being transported under a bill of lading of the Lehigh Valley Railroad Company from New York to Hazelton, Pa., on board float No. 418 belonging to the railroad company. It is admitted that the value of the silk was $6,-273.20. It was carried under the uniform bill of lading, which limited the carrier's liability to $1 per pound when freight at first-class rates was paid, but gave the shipper an opportunity to ship without limitation as to value upon payment of three times the first-class rate, of which option the shipper did not avail itself.

The railroad company paid the libelant the agreed value of $1 per pound, or $3,319, without prejudice to its right to make claim against the defendant for the balance of the value of the goods, viz., $2,954.20.

The railroad company had a time policy of insurance with the defendant, covering the float and cargo in question, reading:

"Cargo Insurance Schedule.

"Lehigh Valley Railroad Company

and/or Lehigh Valley Transportation Company, and/or National Storage Company, and/or Coxe Brothers & Company, Incorporated, and/or Delaware, Susquehanna & Schuylkill Railroad Company,

"As Their Interest may Appear.

"For account of whom it may concern: Loss, if any, payable to them or order.

"On all kinds of lawful goods, wares, and merchandise, including live stock (crude petroleum excepted), against any and all risks and perils of fire, inland navigation, and transportation, the property of the assured, or held in trust or custody, or as freighter, forwarder, bailee, or common carrier, while on board of the following vessels, which are at all times during the currency of this policy admitted as seaworthy, on or under deck, or both, to wit:

\*        \*        \*        \*        \*        \*        \*        \*        \*

"It is further the intent and purpose of this insurance to protect and indemnify also the owners of the above described cargoes, freights and/or advance charges and cars, as fully as though this policy was specially issued to such owners, and the liability hereunder is not to be in any wise affected by any prior, simultaneous, or subsequent insurance by whomsoever made."

The railroad company having refused to bring suit on the policy for the benefit of the libelant to recover the balance of the real, over the agreed, value of the goods, it filed this libel in its own right. Many interesting questions were raised by counsel and considered by Judge Hand as to the construction of the policy, the right of the defendant to prove its intent by extraneous evidence and the right of the libelant to sue on its own behalf. These we need not consider because he dismissed the libel for one reason, in which we entirely concur, namely, that the libelant's claim, being a violation of the Interstate Commerce Act, cannot be enforced.

The railroad company's official classification, filed with the Interstate Commerce Commission and posted in its stations, fixed the value of raw silk carried under the uniform bill of lading, as this shipment was, at $1 per pound. It also provided:

"(e) The cost of insurance against marine risk will not be assumed by carriers unless specifically provided for in tariffs."

Section 6 of the Interstate Commerce Act, as amended by the act of June 29, 1906 (Hepburn Act), 34 Stat. at L. 584, reads:

"Sec. 6. That every common carrier subject to the provisions of this act shall file with the Commission created by this act and print and keep open to public inspection schedules showing all the rates, fares, and charges for transportation between different points on its own route and between points on its own route and points on the route of any other carrier by railroad, by pipe line, or by water when a through route and joint rate have been established. \* \* \* The schedules printed as aforesaid by any such common carrier shall plainly state the places between which property and passengers will be carried, and shall contain the classification of freight in force, and shall also state separately all terminal charges, storage charges, icing charges, and all other charges which the Commission may require, all privileges or facilities granted or allowed and any rules or regulations which in any wise change, affect, or determine any part or the aggregate of such aforesaid rates, fares, and charges, or the value of the service rendered to the pas-

senger, shipper, or consignee. Such schedules shall be plainly printed in large type, and copies for the use of the public shall be kept posted in two public and conspicuous places in every depot, station, or office of such car- rier where passengers or freight, respectively, are received for transporta- tion, in such form that they shall be accessible to the public and can be con- veniently inspected. The provisions of this section shall apply to all traffic, transportation, and facilities defined in this act.

* * * * * * * * * * *

"No carrier, unless otherwise provided by this act, shall engage or partici- pate in the transportation of passengers or property, as defined in this act, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this act; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passen- gers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privi- leges or facilities in the transportation of passengers or property, except such as are specified in such tariffs: Provided, that wherever the word 'carrier' occurs in this act it shall be held to mean 'common carrier.'

* * * * * * * * * *

"The willful failure upon the part of any carrier subject to said acts to file and publish the tariffs or rates and charges as required by said acts, or strictly to observe such tariffs until changed according to law, shall be a mis- demeanor, and upon conviction thereof the corporation offending shall be sub- ject to a fine of not less than one thousand dollars nor more than twenty thousand dollars for each offense; and it shall be unlawful for any person, persons, or corporation to offer, grant, or give, or to solicit, accept or receive any rebate, concession, or discrimination in respect to the transportation of any property in interstate or foreign commerce by any common carrier sub- ject to said act to regulate commerce and the acts amendatory thereof whereby any such property shall by any device whatever be transported at a less rate than that named in the tariffs published and filed by such car- rier, as is required by said act to regulate commerce and the acts amenda- tory thereof, or whereby any other advantage is given or discrimination is practiced. Every person or corporation, whether carrier or shipper, who shall, knowingly, offer, grant, or give, or solicit, accept, or receive any such re- bates, concession, or discrimination shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not less than one thousand dollars nor more than twenty thousand dollars. * * *"

The libelant argues that the giving of marine insurance by the rail- road company is not a rebate, facility or concession connected with transportation within the meaning of the act. We think this alto- gether too technical. No one could contend that a carrier which charged its published rate of freight could lawfully agree in addition to pay the shipper's life insurance or office rent or wages of any of his employés.

It is next urged that this insurance was not a discrimination because it was given to all shippers equally. Nevertheless it was a violation of the act by the carrier, because not stated in its tariff schedules. In- deed, the express contrary was stated, viz., that the carrier would not assume marine insurance unless it was specifically provided for. And the libelant, even though not aware of the insurance at the time the goods were shipped is by this suit violating the act, inasmuch as it is knowingly soliciting a concession by which its shipment was being

"transported at a less rate than that named in the tariffs published and filed by such carrier." American Express Co. v. United States, 212 U. S. 522, 29 Sup. Ct. 315, 53 L. Ed. 635; Chicago, St. P., M. & O. Ry. Co. v. United States, 162 Fed. 835, 90 C. C. A. 211. If the libelant recover in this suit it will get at the expense of the railroad company the full value of its shipment as if it had paid three times first-class freight, when it is only entitled to the agreed value on the freight paid.

The decree is affirmed, with costs.