**BOONE v. UNITED STATES.**
No. 8245.

Circuit Court of Appeals, Sixth Circuit.
Feb. 16, 1940.

A. B. Knipmeyer, of Memphis, Tenn., for appellant.

Daniel H. Kunkel, of Washington, D.C. (William McClanahan, of Memphis, Tenn., and C. P. J. Mooney, of Washington, D. C., on the brief), for appellee.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

Appellant, A. M. Boone, was indicted, convicted and fined $7,500 upon six counts in each of which it was alleged that he did "knowingly and wilfully solicit, accept and receive" from the Illinois Central Railroad Company, a common carrier, "a rebate" in a sum stated "in respect to the transportation" of property in interstate commerce "whereby such property was transported * * * at a rate and charge less" by the sum so stated "than the rate * * * named in the schedules and tariffs * * * published and filed and posted" in violation of 49 U.S.C.A. § 41 (34 Stat. 587).

Each count described a separate carload shipment of bulk corn from Memphis, Tennessee, to certain points in the States of Mississippi and Louisiana, including Kosciusko, Meridian and Jackson in the State of Mississippi, and New Orleans in the State of Louisiana. The Illinois Central Railroad Company had published and filed with the Interstate Commerce Commission certain tariffs and schedules which named and showed rates for the transportation of bulk corn in carload lots from Memphis, Tennessee, to the points of destination referred to in the indictment, which classified "flat rates in cents per 100 pounds" and "proportional rates in cents per 100 pounds."

These tariffs and schedules provide that the flat rates are applicable upon transported carloads of bulk corn originating at Memphis, Tennessee, and consigned to the several respective destinations referred to in the indictment. The proportional ones are applicable to carloads shipped to the stated points of destination either on through continuous shipments reconditioned or reshipped in original cars without unloading which originated beyond St. Louis, Missouri, or East St. Louis, Illinois, the interim transportation being either by railroad or water or partly by both and under tariffs on file with the Interstate Commerce Commission; also on shipments which originate beyond the proportional rate points and which were being transported to Memphis, Tennessee, under filed tariffs and unloaded and passed through elevators, mills, malt houses or warehouses for storage or other purposes connected with the marketing, manufacturing and forwarding of said bulk corn or a like quantity thereof or its products.

The traffic moving under the proportional tariff rates is designated "transit" and defined as unloading and passing through elevators, mills, malt houses or warehouses for storage and other purposes connected with manufacturing and marketing of carload shipments of commodities or for their bleaching, blending, change of consignee or destination or cleaning, clipping, drying, crating, inspecting, mixing, sacking, shelling, shucking, transferring or weighing.

A tariff policing the foregoing tariffs published and filed provides that the identity of transit commodities could not always be preserved and that substitution of tonnage for a like commodity is permissible which could be established by a surrender of inbound representative freight bills credited to representative outbound ones.

Appellant was manager for L. P. Cook, an individual engaged in buying, selling, shipping and storing grain at Memphis, Tennessee, and, with the Illinois Central Railroad Company, his carrier, had been in business at Memphis for more than ten years during which time grain was shipped to and from the Cook warehouse and elevators. Prior to June 13, 1936, L. P. Cook received a load of bulk corn transported by the Federal Barge Line from Chicago, Illinois, to Memphis, Tennessee, which line did not have on file with the Interstate Commerce Commission a schedule of its tariffs or rates. On June 13, 1936, the Barge Line filled six freight cars out of the barge and sealed and marked them "For L. P. Cook Company," which were moved by the Illinois Central Railroad Company over its switching facilities onto the private track of L. P. Cook alongside his warehouse and elevator on Texas Street in Memphis. Appellant directed that these cars be weighed in and out on the private track scales of L. P. Cook without unloading and that inbound and outbound weight

tickets be issued, the car seals removed and replaced with Cook's seals which ran in series.

On the same day appellant's subordinates tendered shipping orders for each of the cars to the local freight agent of the Illinois Central Railroad Company at Memphis for their transportation by rail at the proportional or transit tariff rates of that carrier to the several designated interstate points, i. e., Kosciusko, Jackson and Meridian, Mississippi, and New Orleans, Louisiana, and presented to the carrier unused transit billings, which it accepted and transported and delivered the shipments at the requested rate. There was an aggregate difference of $447.34 between the flat and proportional rates to the points of destination which sum Cook received as a concession if the flat rates applied.

Appellant insists that the proportional or transit rate applies because at the time of the shipments in question, Cook had in his warehouse and elevator, corn shipped by rail from St. Louis or points beyond, for which he held authenticated, receipted freight bills which permitted him to ship from the same premises, a transit station, without being unloaded therein, an equal amount of bulk corn on the Illinois Central Railroad to the points of destination named in the indictment at the through rate from St. Louis less eleven cents per 100 pounds, which was the rate applicable from St. Louis to Memphis.

■ In determining the issue raised at bar, it may be helpful to bear in mind some of the general principles of law relating to tariff on interstate shipments. The purpose of the Congress in passing the present Act was to eliminate every form of inequality in the use of interstate commerce as an instrument of business (Louisville & Nashville R. Co. v. Mottley, 219 U.S. 467, 478, 31 S.Ct. 265, 55 L.Ed. 297, 34 L.R.A.,N.S., 671) and it is therefore made unlawful for anyone to receive any concession in respect of transportation of any property in interstate commerce by a common carrier whereby an inequality results. United States v. P. Koenig Coal Company, 270 U. S. 512, 519, 46 S.Ct. 392, 70 L.Ed. 709.

■ In order that neither secret special service nor privilege should be extended to any one shipper, and as a caveat to both carrier and shipper, all tariff schedules must be filed and open to public inspection. American Express Company v. United States, 212 U.S. 522, 532, 29 S.Ct. 315, 53 L.Ed. 635. The duties of both shipper and carrier are determined by law through the provisions of the tariff which are embodied in the applicable published rate. Baltimore & O. S. W. R. Co. v. Settle, 260 U.S. 166, 170, 43 S.Ct. 28, 67 L.Ed. 189. The carrier is required to collect, and the shipper to pay, the full charge named in the published applicable tariff and in this respect the tariff is to be treated as though it were a statute. Pittsburgh, C. C. & St. L. Ry. Co. v. Fink, 250 U.S. 577, 581, 40 S.Ct. 27, 63 L.Ed. 1151; Pennsylvania R. Co. v. International Coal Mining Company, 230 U. S. 184, 197, 33 S.Ct. 893, 57 L.Ed. 1446, Ann.Cas.1915A, 315.

■ A railroad tariff is not sui generis and its construction generally presents a question of law which does not differ in character from that presented in the construction of any disputed document. Great Northern Ry. Co. v. Merchants' Elevator Company, 259 U.S. 285, 291, 42 S.Ct. 477, 66 L.Ed. 943. Where more than one tariff may be applicable to the same transportation service, all must be considered together, and conflicts avoided where possible, it being presumed that the carrier and regulatory commission did not intend to confuse that which should be plain and if more than one tariff is applicable to the same shipment, the lowest will prevail. Pillsbury Flour Mills Company v. Great Northern Ry. Co., 8 Cir., 25 F.2d 66; Western Grain Company v. St. Louis-San Francisco Ry. Co., 5 Cir., 56 F.2d 160. In case of doubtful applicability of two or more tariffs to the same shipment, the more specific will be followed. United States v. Gulf Refining Co., 268 U.S. 542, 546, 45 S.Ct. 597, 69 L.Ed. 1082; Ohio Foundry Co. v. Pittsburgh, C. C. & St. L. Ry. Co., 19 I. C. C. 65, 67.

[9] The tariffs here must be fairly and reasonably construed in the light of their general design and purpose, to best effect their object.

At the time of the passage of the Act and the creation of the Interstate Commerce Commission, transit privileges were used to a considerable extent and since then have become almost universal. It requires no forced construction of the language of the statute to conclude that a product entering in transportation at one point and temporarily halted at another for the purpose of processing, refining, manufacturing, storage or reconsignment and

then re-entering transportation to the point of consumption is but a completion of the journey first begun.

The privilege of stoppage of tonnage in transit cannot be justified on any theory other than that the identical commodity or its exact equivalent or its product is finally forwarded from the transit point under the through rate applicable from the original point of shipment.

It is not practical to require that identity of each carload of grain be preserved but to the end that loose and fraudulent practices, the use of unlawful rates, unjust discrimination, undue prejudice and substantial revenue losses to the carrier may be prevented, it is unlawful to substitute or forward under the transit rate any commodity that does not move into the transit point at such rate. In The Matter of The Substitution of Tonnage at Transit Points, 18 I. C. C. 280; Id., 24 I. C. C. 340; Id., 26 I. C. C. 204. The necessity of this rule is apparent when consideration is given to the fact that if L. P. Cook disposed of or consumed at Memphis a large part of the grain moved into his warehouse elevator at transit rates, he could by using inbound freight bills against outbound local ones, ship grain of local origin at the lesser through rate, which would discriminate against other local shippers and reduce the revenue of the carrier.

In our opinion the flat rates in the I. C. R. R. Company's published tariffs specifically apply to the present shipments and the proportional or transit tariff construed with the police tariff is inapplicable. It therefore follows that the shipper here involved obtained a rate or charge less than that named in the published schedules and tariffs of the carrier.

There remains for decision whether the facts as a matter of law present substantial evidence to sustain a finding that, beyond a reasonable doubt, appellant knowingly solicited and received for his employer the concession charged in the indictment. Appellant insists the tariffs were confusing and that he acted under the honest belief that the lawfully published, proportional or transit rates were applicable to the shipments and that, even though the flat rates apply, the evidence is insufficient to sustain the burden resting on the United States and therefore does not support a conviction. Standard Oil Company of Indiana v. United States, 7 Cir., 164 F. 376.

The decision depends upon the meaning of the phrase "shall knowingly * * * solicit, accept * * * concessions."

The penalty is not imposed for unwitting failure to comply with the statute, but for intentionally, carelessly, knowingly or voluntarily disregarding the provisions of the Act and its violation requires neither evil purpose nor criminal intent. United States v. Illinois Central Railroad Company, 303 U.S. 239, 243, 58 S.Ct. 533, 82 L.Ed. 773.

Appellant was employed by L. P. Cook as manager of his grain business for more than ten years prior to June, 1936, during which period he was actively engaged in buying, selling and shipping grain. There was a substantial difference between the two tariffs in question and the lower rate was of distinct business advantage which appellant well knew. He instructed the warehouse superintendent not to unload the cars of grain when they moved onto the private tracks and instructed the foreman to replace the seals on the cars and to issue two weight tickets showing those inbound and outbound. He also gave instruction as to what should be placed in the bills of lading and as to the use of inbound freight bills showing grain moving into the warehouse at transit rates. No information was given the carrier as to the origin of the outbound shipments.

On June 25, 1908, the Interstate Commerce Commission issued a ruling that it was "unlawful to substitute at the transit point, or forward under the transit rate, tonnage or commodity that does not move into that point on that same rate." In the Matter of the Substitution of Tonnage at Transit Points, 18 I. C. C. 280. Subsequently, the Commission promulgated many decisions reiterating this rule with which it is presumed appellant is familiar.

After the shipments in question had been made, the date not shown in the record, appellant instructed the warehouse foreman that if any inquiry were made about the cars he was to say "that we unloaded those cars and tell them nothing different."

In September, 1936, after the Inspection Bureau for Memphis carriers had issued corrections on the cars, appellant told the representative of the Bureau that the grain had been unloaded, put through the warehouse and reloaded, and on October 26, 1936, appellant made and filed an affidavit with the Inspection Bureau in which he stated, "These cars, to the best of my knowledge and belief, were handled strictly

in accordance with the tariff requirements, being unloaded and reloaded for outbound movement."

These voluntary actions of appellant are strong proof of his motive in obtaining a shipment of the corn at the lower rate and in connection with the other evidence in the record, support the charges laid in the indictment. Compare Nichols & Cox Lumber Company v. United States, 6 Cir., 212 F. 588.

Judgment affirmed.