The **FLYING TIGER LINE, INC.,**
Petitioner,

v.

**CIVIL AERONAUTICS BOARD,**
Respondent.

No. 18859.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 4, 1965.

Decided June 17, 1965.

Petition for Rehearing En Banc
Denied Oct. 5, 1965.

Mr. Edwin Jason Dryer, Washington, D. C., with whom Mr. Norman L. Meyers, Washington, D. C., was on the brief, for petitioner.

Mr. O. D. Ozment, Associate Gen. Counsel, Litigation and Legislation, Civil Aeronautics Board, with whom Asst. Atty. Gen. William H. Orrick, Jr., Messrs. John H. Wanner, Gen. Counsel, Joseph B. Goldman, Deputy Gen. Counsel, Peter B. Schwarzkopf, Atty., Civil Aeronautics Board, and Lionel Kestenbaum, Atty., Dept. of Justice, were on the brief, for respondent.

Before BURGER, WRIGHT and McGOWAN, Circuit Judges.

BURGER, Circuit Judge:

Petitioner, The Flying Tiger Line, an air carrier licensed for scheduled movement of air freight, seeks review of Civil Aeronautics Board Order No. E 20990, which dismissed without a hearing its complaint against a tariff filed by Pan American World Airways. The challenged tariff sets forth special low rates limited to military stores and impedimenta moving under United States Government bills of lading for the Department of Defense; it deals with air freight transportation chiefly to Asia, Africa and Europe.

Pan American is a combination carrier licensed for both freight and passenger carriage; Flying Tiger carries freight only and in the past has carried air cargo for Military Air Transport Service (MATS) at the lowest rates permitted by the Board. The operations of the Defense Department are of such magnitude that it is the largest single shipper in foreign air transport. Necessarily, the allocation of this carriage among available carriers has an important impact on the civil air transport system. The Board does not have direct statutory power to fix rates in foreign carriage as it does in interstate transportation and to territories and possessions of the United States. Section 1002(f) of the Act, 72 STAT. 789, 49 U.S.C. § 1482(f), gives it power over foreign rates applicable only "to the extent necessary to correct [unjust or undue] discrimination, preference, or prejudice" which is disclosed after hearing and notice before the Board.

Even without direct rate making power the Board has exercised significant indirect control over foreign rates under

its veto power over rates fixed under procedures of International Air Transport Association. Another source of such control is the power to fix minimum rates for military carriage which are not governed by Association established rates; this is done by making such minimum rates a condition of the operating authority granted pursuant to Section 416 (b) exemptions. 72 STAT. 771, 49 U.S.C. § 1386(b). Pan American's rates under review here are no lower than the Board's latest minimum rates under a 1964 Board order renewing an exemption covering service to foreign points from various Air Force Bases. The present rates, however, are not offered under any exemption.

Flying Tiger's complaint contends that the Pan American tariff is an impermissible classification of a *shipper* rather than the familiar classification of a *commodity* and is therefore discriminatory and in violation of Section 404(b) and Section 403(b) of the Act, the latter being the Section which authorizes an air carrier to grant free or reduced fare carriage to specified classes of persons of which the United States Government is not one.

In Flying Tiger's complaint it affirmatively posed the issue as one "purely legal" for which there was "no reason, need, or requirement for an evidentiary hearing." Pan American in moving similarly for summary disposition pointed to the historical background of Board approval of low rates available only under United States Government Bills of Lading for military supplies; it also pointed to similar discrimination applicable to government freight carried by other carriers including Flying Tiger's charter rates with MATS, all substantially less than commercial rates.

Petitioner's complaint asserted that Pan American's rates violate Section 404 (b) of the Federal Aviation Act [1] on the ground that the limitation to Defense Department shipments unjustly discriminates against other shippers as a matter of law. Petitioner asked the Board summarily to order Pan American to discontinue the challenged rates, averring that the notice and hearing contemplated by Section 1002(f) of the Act [2] were unnecessary since Pan American's tariff was illegal on its face.

The Board dismissed Petitioner's complaint and declined for the present to initiate a formal investigation "looking to whether or not the subject rates of Pan American or the numerous other fares and rates currently applicable to military transportation are unjustly discriminatory." In taking this action the Board relied chiefly on its conclusion in *Military Tender Investigation,* 28 C.A.B. 902 (1959), that special fares for military personnel traveling at government expense do not violate Section 404(b) since such travel involves "circumstances and conditions" substantially different from those presented by travel by civilians. [3]

1. (b) No air carrier or foreign air carrier shall make, give, or cause any undue or unreasonable preference or advantage to any particular person, port, locality, or description of traffic in air transportation in any respect whatsoever or subject any particular person, port, locality, or description of traffic in air transportation to any *unjust discrimination* or any undue or unreasonable prejudice or disadvantage in any respect whatsoever. 72 STAT. 760, 49 U.S.C. § 1374(b). (Emphasis added.)

2. (f) Whenever, after notice and hearing, upon complaint, or upon its own initiative, the Board shall be of the opinion that any * * * rate * * * for foreign air transportation * * * is or will be unjustly discriminatory * * * the Board may alter the same to the extent necessary to correct such discrimination * * * and make an order that the air carrier or foreign air carrier shall discontinue * * * any such * * * rate * * *. 72 STAT. 789, 49 U.S.C. § 1482(f).

3. The parties agree on the relevance to the Section 404(b) question of the standard ratemaking principle that discrimination between shippers is not unjust if the service provided one is not "like and contemporaneous" to that provided another, or if the transportation is not of a "like kind of traffic," or if the carriage

In this court the Board has maintained its position that carriage of military property for the Government involves "circumstances and conditions" justifying special rates. It argues additionally that military goods shipped by the Government and physically comparable goods shipped by private persons are not within the contemplation of the term "like traffic" and consequently that no question of discrimination can arise. Petitioner denies both contentions. We find it unnecessary to pass on either.

Nothing advanced at argument persuades us that Pan American's rates are illegal *as a matter of law* under the criteria set out in note 3, *supra.*

■■ The narrow question presented by this record is whether the Board abused its discretion in refusing to investigate the allegation of unjust discrimination. We cannot say that it did. The duty imposed on the Board by Section 1002(a) of the Act, 72 STAT. 788, 49 U.S.C. § 1482(a), to investigate complaints when there is a "reasonable ground" for doing so is a duty to exercise its sound discretion. In the exercise of such discretion, the Board may dismiss even a legally sufficient complaint. Flight Engineers Int'l Ass'n v. C. A. B., 118 U.S.App.D.C. 112, 332 F.2d 312 (1964).

■■ Petitioner's complaint provided the Board with no guidance as to the how and why of the Section 404(b) illegality it alleged to inhere in Pan American's tariff. That Section exists to protect *shippers,* not carriers. *Cf.* I. C. C. v. Baltimore & O. Ry., 145 U.S. 263, 281, 12 S.Ct. 844, 36 L.Ed. 699 (1892). The Board concedes and we assume for present purposes that that fact does not deprive Petitioner of standing as a carrier to challenge the Board's action in this court. But it seems to us that Petitioner's complaint had to make a plausible case that Pan American's rates would cause some substantial injury to *shippers* in order to require the Board to take action. We do not think that Petitioner's assertion that it "is a sometime shipper of transpacific airfreight of the kind and character * * * moved by PAA for the U. S. government under the low impedimenta tariff" is sufficient to do so.[4]

In holding that Petitioner's complaint did not require action by the Board we do not pass upon the Board's reliance on its decision in *Military Tender Investigation, supra.* Even if that decision was correct—and we intimate no opinion on the subject—it does not necessarily control the issue of the legality of Pan American's tariff here. In its *Military Tender* holding the Board relied chiefly on facts showing lower costs for the domestic transportation of military as opposed to civilian personnel and on the existence of strong competition between air and surface carriers for military passengers within the United States. What conditions of this general nature obtain with respect to the *foreign* transportation of military *property* we have no way of knowing from the *Military Tender* decision or from anything now before us.

In arguing that Pan American's rates are illegal per se, Flying Tiger relies also on the absence of the Government from the list of persons in Section 403 (b) of the Act, 72 STAT. 759, as amended, 49 U.S.C. § 1373(b), who may be afforded special rates.[5] But that Sec-

---

involves "circumstances and conditions" not substantially similar. See Section 2 of the Interstate Commerce Act, 24 STAT. 379, as amended, 49 U.S.C. § 2, which the Board has followed in its administration of Section 404(b) of the Aviation Act. E.g., Military Tender Investigation, *supra;* Tour Basing Fares, 14 C.A.B. 257 (1951); Summer Excursion Fares, 11 C.A.B. 218 (1950).

4. What Flying Tiger ships overseas, if anything, other than equipment and supplies for its own operations, is not made clear by the record.

5. Section 403(b) is in pertinent part as follows:

Observance of Tariffs; Rebating Prohibited

(b) No air carrier or foreign air carrier shall charge * * * a greater or

tion, as its heading indicates, seems to be concerned with the observance by carriers of tariffs they have filed and the avoidance of rebates except as authorized by that Section and Board regulations thereunder. Whether published rates are themselves discriminatory seems to raise a problem rather within the rubric of Section 404(b).

■ The Board argues, on the other hand, that Section 403(b) justifies Pan American's rates. This argument encounters the same difficulty as Flying Tiger's, namely, that the Section's concern is observance of published tariffs, not discrimination. Moreover, the authorization for reduced rates in this Section appears to deal exclusively with carriage of passengers except for its tangential adversion to the carriage of property in relief of general epidemics, etc. Cf. American Express Co. v. United States, 212 U.S. 522, 29 S.Ct. 315, 53 L. Ed. 635 (1909). And the Section seems to

contemplate exemptions from its provisions concerning reduced rates only under such circumstances as the Board by regulation prescribes; no such regulations have been cited to us. Finally, even if Section 403(b) could be taken to establish the *prima facie* validity of special rates to the Government for military impedimenta and stores, those rates might still be subject to challenge under Section 404(b). *Cf.* Nashville, C. & St. L. Ry. v. Tennessee, 262 U.S. 318, 43 S.Ct. 583, 67 L.Ed. 999 (1923). We mention the Section 403(b) arguments only because the parties have argued them at length; all we decide is that Section 403(b) does not, as a matter of law, invalidate Pan American's rates.

■ Petitioner having failed to allege facts, adduce evidence or advance reasons compelling Board action on its complaint,[6] we accordingly affirm the Board's dismissal of that complaint.

Affirmed.

less or different compensation for air transportation * * * than the rates, fares, and charges specified in its currently effective tariffs; and no air carrier or foreign air carrier shall, in any manner or by any device, directly or indirectly * * * refund or remit any portion of the rates, fares, or charges so specified, or extend to any person any privileges or facilities, with respect to matters required by the Board to be specified in such tariffs, except those specified therein. Nothing in this Act shall prohibit such air carriers or foreign air carriers, under such terms and conditions as the Board may prescribe, from issuing or interchanging tickets or passes for free or reduced-rate transportation to their directors, officers, and employees * * *; witnesses and attorneys attending any legal investigation in which any such air carrier is interested; persons injured in aircraft accidents and physicians and nurses attending such persons; immediate families, including parents, of persons injured or killed in aircraft accidents where the object is to transport such persons in connection with such accident; and any person or prop-

erty with the object of providing relief in cases of general epidemic, pestilence, or other calamitous visitation; and, in the case of overseas or foreign air transportation, to such other persons and under such other circumstances as the Board may by regulations prescribe. Any air carrier or foreign air carrier, under such terms and conditions as the Board may prescribe, may grant reduced-rate transportation to ministers of religion on a space-available basis.

6. Petitioner failed to allege, for example, that Pan American's rates are noncompensatory. Such an allegation would be a factor for the Board to consider in the exercise of its discretion in deciding whether to pursue a complaint like Petitioner's. Some have urged repeal of Section 22 of the Interstate Commerce Act, 24 Stat. 379, as amended, 49 U.S.C. § 22, which authorizes carriage of government property at reduced rates, on the theory that such rates have been responsible for offsetting increases in rates to commercial shippers. See S.Rep. No. 410, 87th Cong., 1st Sess. (1957).