### UNITED STATES v. ERIE R. CO. et al.

#### (District Court, D. New Jersey. March 27, 1915.)

1. CARRIERS ⊜⟹38—OFFENSES—INDICTMENT—CONCESSIONS.

The Hepburn amendment by Act June 29, 1906, c. 3591, § 2, 34 Stat. 587, to Elkins Act Feb. 19, 1903, c. 708, § 1, 32 Stat. 847 (Comp. St. 1913, § 8597), so as to make a carrier punishable thereunder only in case it knowingly violated the act, does not require an indictment against a corporation for knowingly granting a shipper a concession in rates, by applying the import rate to a shipment which was not entitled thereto under the published tariffs, to allege the name of the agent by whom the concession was granted, since the company's knowledge is the sum of the knowledge of all its agents, though the transaction be executed by only one of them.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 96, 97; Dec. Dig. ⊜⟹38.]

2. CARRIERS ⊜⟹38—OFFENSES—INDICTMENT—CONCESSIONS.

The fact that an agent of a carrier was indicted jointly with it for granting an unlawful concession to a shipper, contrary to Hepburn Act June 29, 1906, § 2, and charged with doing the act as the agent of the carrier, does not in itself charge the carrier with doing the act through that agent, so that it cannot be convicted if the agent is acquitted.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 96, 97; Dec. Dig. ⊜⟹38.]

3. CRIMINAL LAW ⊜⟹972—MOTION IN ARREST OF JUDGMENT—DETERMINATION.

A motion in arrest of judgment can be made only on the record proper, of which the evidence forms no part.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2423; Dec. Dig. ⊜⟹972.]

4. CARRIERS ⊜⟹38—OFFENSES—UNLAWFUL CONCESSIONS—"KNOWINGLY."

A carrier is guilty of "knowingly" granting an unlawful concession in rates, contrary to Hepburn Act June 29, 1906, § 2, though neither it nor its agents had actual knowledge of the facts which made the rate unlawful, if they willfully or intentionally remained in ignorance of such facts, but not if they were negligent only in not ascertaining the facts.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 96, 97; Dec. Dig. ⊜⟹38.

For other definitions, see Words and Phrases, First and Second Series, Knowingly.]

---

⊜⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. CARRIERS ⬤⟿38—OFFENSES—SUFFICIENCY OF EVIDENCE—UNLAWFUL CONCESSION—KNOWLEDGE.

In a prosecution against a carrier for knowingly granting an unlawful concession in rates, evidence *held* not to show that the carrier knew, or willfully and intentionally remained in ignorance of, the facts which made the rate unlawful.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 96, 97; Dec. Dig. ⬤⟿38.]

The Erie Railroad Company and another were jointly indicted for granting an unlawful concession in rates to a shipper, and the Railroad Company alone was convicted. On motions in arrest of judgment and for new trial. Motion in arrest of judgment denied, and motion for new trial granted.

J. Warren Davis, U. S. Atty., of Trenton, N. J., Alexander H. Elder, Asst. Atty. Gen., of Washington, D. C., and Walter H. Bacon, Asst. U. S. Atty., of Bridgeton, N. J., for the United States.

Collins & Corbin, of Jersey City, N. J., for defendant Erie R. Co.

HAIGHT, District Judge. The Erie Railroad Company and William S. Cowie, an agent of the company, were jointly indicted for a violation of section 1 of the act of February 19, 1903 (32 Stat. 847), commonly known as the "Elkins Act," as the same was amended by Act June 29, 1906 (34 Stat. 587), commonly known as the "Hepburn Act." The specific charge was that they had applied to an interstate shipment an "import rate," when a "domestic rate" was the lawful one, and had thereby granted a concession—the import rate being the lower. The "import rate," according to the filed and published tariffs of the company, was applicable "only on property received direct from the ship's side or dock of steamer upon which imported or from customs bonded warehouses or appraisers' stores (not internal revenue stores)." They were tried before a jury, and the defendant company was convicted, but Mr. Cowie was acquitted. The company now moves in arrest of judgment, upon the ground that the acquittal of Mr. Cowie required that it be also acquitted. It also moves for a new trial: (1) Because of alleged errors in the charge to the jury; and (2) because the evidence was insufficient to warrant a conviction. These will be considered in the order stated. Although I have reached the conclusion that the verdict must be set aside and a new trial granted upon the second of the above reasons advanced on behalf of the defendant company for a new trial, I have deemed it proper to determine the other questions presented, as they are important and will certainly arise upon another trial.

[1] 1. The argument in support of the motion in arrest of judgment proceeds on the theory that the indictment charges that the act for which the company was convicted was done *through* Mr. Cowie, as agent, and that as the corporation can act only through its agents, and as the indictment purported to name the agent through whom the company acted, one cannot be convicted and the other acquitted. This argument would unquestionably be sound, and probably the defendant

company could avail itself of it, on a motion in arrest of judgment, if the indictment were construed as the defendant contends that it should be. The determination of the question presented, therefore, necessitates an interpretation of the indictment. Primarily the defendant contends, in support of its construction, that an indictment against the carrier under the Hepburn Act must name or describe the agent or agents through whom the illegal act was done, and that consequently this indictment is demurrable unless it is construed as alleging that the unlawful acts, with which the company is charged, were done through Mr. Cowie. Manifestly, if the defendant's position in this respect is correct, great weight should be given to its main contention regarding the meaning of the indictment. The allegations essential to a valid indictment have thus been stated by Mr. Justice Day, in Armour Packing Co. v. United States, 209 U. S. 56, at page 83, 28 Sup. Ct. 428, at page 436 (52 L. Ed. 681):

"This court has frequently had occasion to hold that the accused is entitled to know the nature and cause of the accusation against him, and that a charge must be sufficiently definite to enable him to make his defense and avail himself of the record of conviction or acquittal for his protection against further prosecutions, and to inform the court of the facts charged, so that it may decide as to their sufficiency in law to support a conviction, if one be had, and the elements of the offense must be set forth in the indictment with reasonable particularity of time, place, and circumstances. And it is true it is not always sufficient to charge statutory offenses in the language of the statutes, and where the offense includes generic terms it is not sufficient that the indictment charge the offense in the same generic terms, but it must state the particulars."

In Chicago, St. P., M. & O. Ry. Co. et al. v. United States, 162 Fed. 835, at page 838, 90 C. C. A. 211, at page 214 (C. C. A. 8th Circuit), Judge Adams, after stating the above rule, said:

"There are found in the indictment clear and definite allegations showing the kind of property shipped, the time and place when shipped, the consignee to whom shipped, the existing legal tariff or rate for such shipment, the payment thereof by the shipper to the carrier, the subsequent payment of the rebate or concession by the carrier to the shipper, the time when it was paid, and the amount thereof. These details afforded all the required certainty, and the indictment was clearly sufficient."

The indictments in both of these cases were framed under section 1 of the Elkins Act, before it was amended, and it was held to be unnecessary to set forth the particular device by which the concession or rebate had been granted. Reference to the indictment in the case at bar shows that all of the allegations which were considered, in the case last cited, as sufficient to sustain the indictment there under consideration, are present here, except the subsequent payment of the rebate; but in lieu of that, and in conformance with the facts, it alleges the charging and payment of a lower rate than that provided in the filed schedules or tariffs. The Elkins Act originally made a carrier who should offer, grant, or give a rebate, concession, or discrimination criminally responsible. This was amended by the Hepburn Act, so that the carrier, to be criminally liable, must *knowingly* offer, grant, or give a rebate or concession or discrimination.

The defendant company contends that the insertion of the word

"knowingly," in the statute, entitled it to be informed, in the indict-ment, of the name or description of the agent or agents whose knowl-edge the company is to be charged with, and that therefore the allega-tions which were considered as sufficient in the cases above cited (which arose before the Elkins Act was amended) are no longer sufficient. Mr. Justice Day, however, laid down a general well-settled rule, applica-ble to all indictments. After setting forth all of the essential details, I cannot conceive that it was necessary, in order to comply with the above-mentioned rule, to allege the name of, or describe, the agent or agents who granted the illegal rate. Having been informed of all the essential facts, it was within the power of the defendant company to ascertain from its own agents which of them, if any, had done the unlawful acts. In addition it has recently been held by the Circuit Court of Appeals of the Sixth Circuit, in Grand Rapids & I. Ry. Co. v. United States, 212 Fed. 577, 129 C. C. A. 113, where an indictment framed under the Elkins Act, as amended, was before the court, that it was not necessary to set forth the method or device used to avoid the law, and that the carrier is responsible for the acts of all of its agents; their combined knowledge and conduct being that of the carrier, even though the transaction is executed by only some of its agents.

Surely it was not incumbent upon the government to name or de-scribe in the indictment all of such agents. Their identity was pecul-iarly within the knowledge of the defendant carrier. If the govern-ment were required to name or describe all of them in an indictment, it is quite safe to assume that, on the trial of a great majority of such cases, there would be material variances. In construing the indictment, therefore, it has been considered that it was unnecessary to name or describe the agent or agents in the indictment.

[2, 3] The statute on which the indictment is based makes the car-rier's agents and officers, who come within its provisions, criminally responsible, as well as the carrier. An agent or officer can therefore properly be jointly indicted with his principal. That is precisely what was done in this case. On the face of the indictment it is not charged that the unlawful acts were done by the defendant corporation through Mr. Cowie, but he was jointly indicted with the company. The de-scription of Cowie as an agent was an essential allegation, so far as he was concerned, because, by the terms of the statute, it was only as an agent, officer, or person acting for or employed by the company, acting within the scope of his employment, that he was liable. As it was not essential to the validity of the indictment that the agent or agents for whose act the company was to be charged should be named or de-scribed, and as the indictment does not, on its face, charge that the unlawful acts were done through a particular agent, and as the desig-nation of Mr. Cowie as an agent was essential to the validity of the in-dictment, so far as he is concerned, I can see no good reason for giving to the indictment a meaning different from that which appears on its face. Therefore, as the indictment did not limit the crime with which the company was charged to Mr. Cowie's acts and knowledge alone, his acquittal is not inconsistent with the company's conviction; and as the motion in arrest of judgment can be made only on the record,

of which the evidence forms no part, it follows that such motion must be denied.

This also disposes of defendant's contention, on the motion for a new trial, that it was error to charge the jury that under the indictment the company could be convicted and Cowie acquitted.

[4] 2. The principal question of fact in the case, was whether the defendant company *knowingly* granted a concession. The determination of this depended upon whether the company, through its agents, had knowledge of facts which would have made the import rate, under the published tariffs, unlawful. On this point the jury were instructed, in substance, that before the company could be convicted they must find that the agents of the company, who were instrumental in fixing the rate, had knowledge of the facts which made the import rate unlawful, or that they willfully or intentionally remained in ignorance of them, in which latter case they would be charged in law with knowledge of such facts as reasonable inquiry or investigation would have revealed. They were specifically cautioned that negligence was not sufficient to constitute willful ignorance, in the following words:

"I do not mean to be understood by this as stating that negligence is sufficient to charge one with knowledge, but his failure to make further inquiry must indicate a willful and perverse intention to remain ignorant. Nor can any finding of such willful ignorance be based on mere conjecture or speculation, but must be based solely on the evidence in the case."

It was urged by the defendant at the trial, and is urged here, that nothing short of actual knowledge, on the part of its agents, of the facts which made the import rate unlawful, could render it liable for *knowingly* granting a concession, and that it was error to hold that the defendant could be charged in law with knowledge if its agents willfully remained ignorant. This contention was considered during the trial as fully as the limited time at my disposal would permit. It has since been carefully considered in the light of the authorities brought to my attention by the able counsel for the defendant; but I see no reason to change the opinion which I entertained at the time of the trial, and which was expressed in the charge to the jury. The defendant company, under the terms of the act, must be held to know the tariffs which it had filed and published. Under familiar principles it will also be presumed to know that a departure from such tariffs constituted a violation of law and subjected it to punishment. But manifestly, if through its agents it honestly believed, at the time the rate was given, that this particular shipment was to be taken from the dock where it had been landed by the steamer on which it was imported (a fact which would have made the import rate lawful), but it later developed that the goods were not originally unloaded from the steamer on the dock from which they were taken by the defendant, it could not be held to have *knowingly granted* a concession, because it did not know of the facts essential to make the import rate inapplicable and the granting of it unlawful.

If, however, the carrier willfully and intentionally remained in ignorance of the facts necessary to determine whether the import rate was lawful, must it not be charged in law with the knowledge of the

facts which reasonable inquiry and investigation would have revealed? It seems to me, both upon reason and authority that this must be so. It has been authoritatively decided that it was not necessary under the Elkins Act that there should be an intentional violation of the law, but that purposely doing a thing prohibited by the statute amounted to an offense, although the act did not involve turpitude or moral wrong or an intent to violate the law. Armour Packing Co. v. U. S., 209 U. S. 85, 28 Sup. Ct. 428, 52 L. Ed. 681; Chicago, St. P., M. & O. Ry. Co. v. United States, 162 Fed. 835, 90 C. C. A. 211. In the latter case it was assumed (without deciding) that the adjective "willful," found in the earlier part of section 1 of the Elkins Act, was carried forward and made to qualify the misdemeanor denounced in the granting or giving of rebates or concessions, so that the giving or granting of them would be criminal only in the event that it was done "willfully." If, under the Elkins Act, a carrier is liable for having "willfully" granted a concession, when it in fact had no intention of disobeying the law, a fortiori should one who willfully remains ignorant be charged with knowledge of what would have been learned, had inquiry or investigation been made. In Nichols & Cox Lumber Co. v. United States, 212 Fed. 588, 129 C. C. A. 124 (C. C. A. 6th Cir.), where the indictment was framed under the Elkins Act, as amended by the Hepburn Act, the defendant, who was a shipper, urged that it could not be rightfully convicted, because its agents who had solicited the unlawful rates acted under a good-faith misapprehension as to the interpretation to be given to the tariffs. As to this contention Judge Warrington said (212 Fed. at page 593, 129 C. C. A. at page 129):

"As to the second reason, the only question involved concerned a choice between the local and the transit rates, and, aside from their obvious knowledge that the latter was the lower rate, the agents, and consequently the defendant, must be presumed to have known which was applicable."

It thus appears that, even under the amended act, knowledge may be presumed, although actual knowledge was not shown.

In Spurr v. United States, 174 U. S. 728, at page 735, 19 Sup. Ct. 812, at page 815 (43 L. Ed. 1150) the statute on which the prosecution was based imposed criminal responsibility upon one who should willfully do certain prohibited acts. The question for determination was stated, in the opinion, to be the defendant's *knowledge* of the state of a depositor's account when certain checks were certified, and his intent in the certification. It was said by Chief Justice Fuller:

"Wrongful intent is the essence of the crime. If an officer certifies a check with the intent that the drawer shall obtain so much money out of the bank when he has none there, such officer not only certifies unlawfully, but the specific intent to violate the statute may be imputed. *And so evil design may be presumed if the officer purposely keeps himself in ignorance of whether the drawer has money in the bank or not, or is grossly indifferent to his duty in respect to the ascertainment of that fact.*"

The errors dealt with were the remarks of the trial judge to the jury when asked for further instructions. These remarks were specifically stated by the trial judge to be in addition to the instructions which he had given them in the original charge. The Supreme Court held that, under the circumstances, the omission in the later remarks could not

properly be held to have been supplied by a reference to the prior instructions. A part of the latter are quoted in the opinion of the Supreme Court, and apparently received its approval. After stating that if the defendant, at the time he certified the checks, believed that the account of the drawer of the checks was sufficient to cover them, he should be acquitted, the trial judge said:

"Unless such ignorance of the overdraft was willful as elsewhere explained in the court's instructions. * * * Unless you are convinced by the proof beyond a reasonable doubt that he willfully, designedly, and in bad faith—these words mean substantially the same thing—shut his eyes to the fact and purposely refrained from inquiry or investigation for the purpose of avoiding knowledge."

It thus appears that the Supreme Court has given its sanction to the proposition that one may be held criminally responsible for purposely keeping himself in ignorance of facts, when the crime with which he is charged required *knowledge* of those facts. I can perceive no difference in principle between that case and the one at bar. I think, also, that the same rule may be properly gathered from that part of the decision of the Circuit Court of Appeals of the Sixth Circuit, in Grand Rapids & I. Ry. Co. v. United States, supra, which deals with the question as to whether the refunds or concessions were given *knowingly*. It is true that this question was not directly passed upon in that case, but I think the remarks of the court lend support to the view here entertained. See, also, 12 Cyc. 157; Wharton's Crim. Law, vol. 1, § 89. The defendant corporation was under a duty to apply the lawful rate. It cannot be presumed that Congress, in framing an act so comprehensive as this, intended that a carrier, upon whom such a duty was cast, could willfully and intentionally remain ignorant of the facts necessary to determine which was the proper rate, and then shield itself from prosecution on the plea of lack of knowledge.

Counsel for the defendant have cited a great many authorities as to the meaning of the word "knowingly," when used in a criminal statute. Giving due effect to them, and to the general rule that a penal statute must be construed strictly, I cannot see that the charge to the jury was erroneous. The word "knowingly" was not construed in any other than its accepted legal meaning, but there was applied, not by way of statutory construction, a principle of law, namely, that where one upon whom a duty to know is cast intentionally or willfully keeps himself in ignorance, he will be estopped to deny knowledge of what he could have learned by reasonable inquiry and investigation. In none of the cases cited by counsel for the defendant is this proposition denied; in fact, it seems not to have been considered or presented. It seems unnecessary to review these cases, because I do not consider that the proposition expounded to the jury in any way conflicts with them. What was held by the Circuit Court of Appeals of this Circuit, in United States v. Lehigh Valley R. R. Co., 204 Fed. 706, 123 C. C. A. 9, was that the words "knowingly and willfully" in the so-called "Twenty-Eight Hour" Law were not synonymous with "negligently," and that it was not possible to commit an act "knowingly and willfully" unless the act be consciously in the mind. But this is quite different from holding that one who intentionally remains ignorant may not be charg-

ed in law with knowledge. The jury in the case at bar were instructed that mistake or negligence was not equivalent to knowledge.

[4] 3. I have read and considered very carefully all of the testimony and exhibits in the case, and I cannot escape the conclusion that there was not sufficient evidence to permit the jury to legitimately infer either actual knowledge on the part of any of the agents of the defendant company that the shipment in question had not been originally landed at the American docks from the ship on which it had been imported, or that any such agents willfully remained ignorant of this fact. In reaching this conclusion, I have given due weight to the verdict of the jury and to the general rules which should govern courts in setting aside verdicts as contrary to the evidence. I have also considered that it is the combined knowledge and conduct of all of the agents of the company which constitutes the knowledge and conduct of the carrier (Grand Rapids & I. Ry. Co. v. United States, supra), and also that Mr. Cowie's acquittal could be entirely consistent with a conviction of the defendant.

A more careful examination of the evidence than was possible at the time of the trial leads me to believe that, under the rule prevailing in this circuit (Zilbersher v. Penn. R. Co., 208 Fed. 280, 125 C. C. A. 480; United States v. Erie, 212 Fed. 853, 129 C. C. A. 307) the defendant's motion for a direction of verdict upon the ground of lack of evidence should have prevailed, and that the verdict would be reversed for this reason on appeal. There was practically no conflict in the evidence. A lengthy review of the evidence would serve no useful purpose here; but a brief statement of my conclusions should, I think, be made. As before stated, the import rate could lawfully be applied, under the filed and published tariffs, only in the event that the property which was transported was to be taken by the defendant, for purposes of shipment, direct from the ship's side or the dock of the steamer upon which it had been imported into this country, or from a customs bonded warehouse or appraisers' store. The evidence demonstrates that none of these conditions were present. The import rate was therefore illegal, and under the statute the granting of it constituted a concession. There is no doubt that the agents of the defendant knew that the property was not to be taken for shipment by the defendant from either the steamer upon which it had been imported or from a bonded warehouse or appraisers' store; but there is no evidence that any of them knew that it was not to be taken from the dock, or a warehouse connected with the dock, upon which it had been originally landed in this country. The evidence is quite overwhelming to the effect that all of the agents of the company in New York who had anything to do with the decision of whether the import rate should be applied proceeded on the assumption that the property was to be taken from the dock, or a warehouse connected therewith, on which it had been originally landed. The question which was the subject of discussion among these agents was whether the import rate should be applied, if the property had been stored in a free warehouse connected with the dock on which it had been originally landed.

As a matter of fact, the property had been landed at an entirely dif-

ferent dock, and later transported to the dock and warehouse from which the defendant company took it. The application to quote the rate was made to the New York office by an agent in Boston. Considerable correspondence, and several telegrams and telephone messages, regarding the rate, passed between this agent and those in New York. It is uncontradicted that Mr. Cowie, after consulting with some of the other agents of the defendant as to the proper interpretation of the tariffs, communicated to the Boston agents the conditions prescribed in the tariffs, under which the import rate could be given. The latter testified that he repeated these conditions to the shipper. If this is so (and there is no evidence to the contrary), the fault would seem to lie with the shipper in not advising the Boston agent that the property to be shipped had not been originally landed on the dock from which the railroad company was to take it. In view of the length of time which had transpired since the property was landed in this country, and some of the other circumstances in the case (of all of which the company, through its agents, had notice), it would seem that there was negligence on the part of the agents of the company in not making further inquiries as to whether the property had been originally landed at the American docks.

But negligence is not sufficient, in a case such as this, to charge knowledge. It may also be that the agent in Boston was negligent in not asking, if he did not (the evidence does not disclose whether he did or not), of the shipper, the specific question whether the property had been originally landed at the American docks. There are, I am free to admit, some suspicious circumstances, yet these are as consistent with the theory of negligence as of a willful intent to remain ignorant. There are some facts, undoubtedly, in the possession of some of the witnesses who testified, which were not revealed at the trial, and which, if revealed, would materially assist in settling the question of knowledge or willful ignorance. For instance, it was not shown who stamped on the shipping order the words "Import Freight," and if this was done by an agent of the defendant company, what information he had as to where the property had been originally landed, and if he had any information, from whom he received it, and why the import certificate was not filled in. But it would not be proper to convict the defendant upon bare suspicion, or assumption of facts, which the evidence did not disclose. My conclusion, therefore, is that the defendant's motion for a new trial on this ground must prevail.

The verdict will therefore be set aside, and a new trial granted.