**CONTINENTAL CAN COMPANY, Inc.,**
**Petitioner,**

v.

**UNITED STATES of America and Federal Maritime Board, Respondents.**

**No. 25, Docket 25504.**

United States Court of Appeals
Second Circuit.

Argued Oct. 16, 1959.

Decided Nov. 25, 1959.

---

Clark, Chief Judge, dissented.

---

Willkie, Farr, Gallagher, Walton & FitzGibbon, New York City, H. Bartow Farr, Vincent R. FitzPatrick, S. Roy French, Jr., New York City, on the brief, for petitioner.

Robert J. Blackwell, Atty., Federal Maritime Board, Washington, D. C. (Robert A. Bicks, Acting Asst. Atty. Gen., Richard A. Solomon, Atty., Dept. of Justice, Washington, D. C., E. Robert Seaver, Robert E. Mitchell, Edward Aptaker, Attys., Federal Maritime Bd., Washington, D. C., on the brief), for respondents.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and J. JOSEPH SMITH, District Judge.

MOORE, Circuit Judge.

Petitioner, Continental Can Company, Inc,[1] petitions for review of an order of the Federal Maritime Board ("the Board") made in a proceeding instituted by the Board on its own motion against petitioner. The issues were: (1) whether petitioner, in shipping by ocean carrier from the United States to Venezuela glass containers, called "packer's tum-

---

1. In 1956 petitioner acquired the property of Hazel-Atlas Glass Company which was thereupon dissolved. Since September 1956 the business of Hazel-Atlas has been carried on as the Hazel-Atlas Glass Division of petitioner.

blers," manufactured by it, misclassified the containers as "Bottles or Jars, Empty, Glass" instead of classifying them as "Tumblers"; and (2) whether petitioner misclassified the containers "knowingly and willfully." [2]

The Board Examiner as his "Ultimate Findings of Facts and Conclusions" found in substance that packer's tumblers are primarily empty glass jars used as glass containers for packaging; that they were ordered as containers by customers of petitioner engaged in the business of manufacturing and packing food products; and that the containers "may and often have a re-use as drinking glasses by the purchaser of the packaged product." He concluded that these packer's tumblers fell within the classification "Bottles or Jars, Empty, Glass" rather than "Tumblers." In addition he found that the applicable tariffs published by the United States Atlantic & Gulf-Venezuela and Netherlands Antilles Conference ("the Conference") were ambiguous and that ambiguous tariffs as a matter of law must be resolved against the carrier or the Conference. The Examiner recommended that petitioner's motion that the proceeding be discontinued be granted.

The Board (two members) made additional findings of fact, rejected the Examiner's conclusions and held that "it is obvious that respondent's [petitioner here] classification was not correct." It also found that petitioner "knowingly and wilfully violated section 16 of the Act." The third member of the Board dissented, holding that a packer's tumbler is "first and foremost a glass container—a jar—manufactured for the primary purpose of packaging food stuffs" and that its use as a drinking glass is "both secondary and incidental

to its primary use." He therefore concluded that the classification used by petitioner was proper and that at least the tariffs were ambiguous, justifying the selection of the Bottles and Jars tariff.

The facts are not in dispute, the case having been heard upon a stipulation of facts to which numerous exhibits were annexed. During the periods of time in which the shipments in question were made two tariffs (VEN–6 and VEN–7) were in effect. The classifications which might have been relevant [3] to a shipper of such merchandise were:

"Item 1000 * * * Tumblers, viz: Glass * * *"; and
"Item 115 * * * Bottles or Jars; Empty, Glass (not Cut Glass or Vacuum), with or without their equipment of Caps, Covers, Stoppers, or Tops (not Nipples) * * *"

The glassware being shipped consisted of glass containers. These containers were listed on a special price list issued by petitioner entitled "Packers Tumblers." Petitioner also published separate catalogues and price lists for its glassware and drinking glasses, i. e., tumblers.

When shipping the containers to Venezuela petitioner had to choose between the classification "Bottles or Jars; Empty, Glass" and "Tumblers." There was no special tariff for "packers tumblers." At the time this decision had to be made there was a publication entitled "Glossary of Packaging Terms" published by the Packaging Institute, Inc. Therein "Packer's tumbler" was defined as: "A jar, pressed, without neck, used for the packing of certain products and suitable for re-use for drinking pur-

2. Section 16 of the Shipping Act, 1916, as amended, 46 U.S.C.A. § 815 reads as follows: "It shall be unlawful for any shipper, consignor, consignee, forwarder, broker, or other person, or any officer, agent, or employee thereof, knowingly and willfully, directly or indirectly, by means of false billing, false classification, false weighing, false report of weight, or

by any other unjust or unfair device or means to obtain or attempt to obtain transportation by water for property at less than the rates or charges which would otherwise be applicable."

3. A third classification, "Item 1000 * * Glassware, N. O. S. * * *" is conceded to be inapplicable.

poses." The then current Webster's New International Dictionary, Second Edition, 1944, defined "tumbler" as a "drinking glass without a foot or stem * * *." Furthermore, in interstate shipments by rail packer's tumblers of the same type here in question were being placed in the category of bottles and jars for tariff purposes. With the knowledge that the "packer's tumblers" were to be used as food containers and that such use as might be made of the container by the ultimate purchaser as a drinking glass was entirely secondary, petitioner was wholly justified in considering the containers as glass jars. They were not sold by petitioner or purchased by petitioner's customers as drinking glasses. Nor would any housewife, desirous of acquiring drinking glasses for her dining table, be likely to do so by purchasing a variety of food products in containers subsequently to be elevated in status from the kitchen to the dining room after the family had eaten its way through a dozen jars of jelly, cheese, marmalade and peanut butter. The primary purpose of a packer's tumbler, i. e., to contain food, is certain. Thereafter its fate is more uncertain and precarious. The erstwhile container may find its way into the garbage can, a picnic basket, the kitchen or the carpenter shop as a container of nails or paint brushes. In any event packer's tumblers in their secondary stage are highly expendable. In direct contrast are drinking glasses ("tumblers") which are usually not subjected to such experiences except fortuitously. Their classification is and should be entirely different.

■ In reaching their decisions, neither courts nor administrative bodies should ignore the realities of life and disregard common knowledge even though such knowledge may not have achieved a place within the purview of judicial notice. Many food items today are sold in containers which may ultimately be used for other purposes. This potential additional use is, as petitioner

concedes [4] "a help in marketing the packaged product." This possibility, however, does not change the container character of the article shipped to the food packager. The packager is not buying tumblers nor reselling tumblers. Furthermore, packer's tumblers must be specially manufactured so as to have a "finish" (the edge of the glass) to which the metal or other enclosing cap may be attached.

■ A few cardinal principles of tariff law suffice as a guide to the proper decision.

The "controlling use" determines the classification (Sonn v. Magone, 1895, 159 U.S. 417, 16 S.Ct. 67, 40 L.Ed. 203; Magone v. Heller, 1893, 150 U.S. 70, 14 S.Ct. 18, 37 L.Ed. 1001; Worthington v. Robbins, 1891, 139 U.S. 337, 11 S.Ct. 581, 35 L.Ed. 181; Maillard v. Lawrence, 1853, 16 How. 251, 14 L.Ed. 925; Sonken-Galamba Corporation v. Union Pac. R. Co., 10 Cir., 1944, 145 F.2d 808). A homely illustration of possible double use of articles was given by the Supreme Court over a hundred years ago in deciding that for duty purposes "shawls" were essentially "wearing apparel" despite the fact that they might be used for other purposes and that even a "stocking" retained its own character although temporarily demeaned into a lowly nightcap by its owner (16 How. 251, 261).

■ Ambiguity should be resolved against the carrier where "the tariff, having been written by the carrier, is vulnerable against the carrier if the tariff's meaning is ambiguous" (Rubber Development Corp. v. Booth S.S. Co., et al., 2 U.S.M.C. 746, 748 (1945)).

■ Respondents have failed to adduce proof that the controlling use of the containers in question was, or was intended to be, a drinking glass or tumbler.

Assuming that a selection had to be made as to tariff classification between the two items, the question of choice at least is sufficiently close to present ambiguity.

---

4. Petitioner's brief, p. 8.

■ Finally, there is no justification for holding that one classification is so clearly right and the other wrong that willful and knowing intent to misclassify is the only fair conclusion. Thus far a Trial Examiner who devotes himself to dealing with tariff problems has held petitioner's classification to be correct. A Board member in a well-reasoned dissent has agreed. Two Board members believe otherwise. This court itself is not in agreement. This situation alone should clearly establish ambiguity. If choice has to be made between one Trial Examiner and one Board member as against two Board members, possibly guidance is to be received from the Supreme Court's comment concerning the weight to be given to a Trial Examiner's findings, namely, "that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion" (Universal Camera Corp. v. National Labor Relations Board, 1951, 340 U.S. 474, 496, 71 S.Ct. 456, 469, 95 L.Ed. 456). Furthermore, ambiguity having been raised, the parties may well resolve these issues amongst themselves. At least they should have the opportunity. On the record as a whole, it cannot be said that the Board's findings were supported by substantial evidence.

The order of the Board is set aside with directions to enter a new order to the effect that the proceeding against petitioner in Docket No. 823 be discontinued.

**J. JOSEPH SMITH, District Judge** (concurring).

I concur in the result. I do not agree that we should upset the Board's finding as to classification. The Board's decision on proper classification was within its power on sufficient evidence in the record, and we should so hold. However, the finding of willfulness, based on failure to inquire of the interested Conference as to which of two arguable classifications (see opinions of trial examiner and dissenting Board Member) should apply is without support in the record and this by itself falls short of willfulness as the term should be construed in a penal statute. I therefore concur in the order setting aside the order of the Board and discontinuing the present proceeding.

**CLARK, Chief Judge** (dissenting).

I disagree with both opinions herein and would affirm the order as it stands. As Judge Smith points out, there seems ample basis in the evidence to sustain the classification made by the governmental agency charged by law with the responsibility of making it and having the expert knowledge and experience to do so which courts conspicuously lack. Much of this evidence is not noted in the principal opinion; and I shall only summarize it here, since our function is not to make the classification, but to see if it has support in the record. Actually the support is extensive. It includes (1) physical appearance and shape of petitioner's product, which is clearly that of tumblers, not of bottles or jars; (2) cost of service as to space or special packing and other attention, again clearly that required for drinking tumblers, rather than for bottles or jars; (3) practice of the trade, shown in several ways, as by the "Glossary of Packaging Terms,"[1] published by the Packaging Institute, Inc. (to which petitioner subscribes), the explicit affidavit of Marshall, Vice Chairman of the important freight conference, and the attempt of the Antilles Conference to intervene to preserve its classification; (4) the holding out to the public, which was that of "packer's *tumblers*," with the label of "glass-jars" employed only on petitioner's bills of lading to its carriers; and (5) the intent or proposed

---

[1] Though not noted in the opinion, the Glossary contains this definition of "tumbler": "A container made like a drinking glass, with straight sides or sides flaring slightly outward toward the opening. Also *packer's tumbler*. Usually made of glass but also made from transparent molded plastic."

use—a point strongly urged by the petitioner and in fact its one important argument—viz., that the tumblers, though shipped empty, were intended for use as food containers, but one which fails of conviction, since petitioner also sold the product for the other, or (so-called) secondary, use as a tumbler.[2] Against this background, involving both the practice of the trade and objective standards or criteria, the holding favoring this one petitioner will appear to other shippers and the carriers as special discrimination.

Turning now to the issue here incompletely abbreviated as that of "willfulness" we should have in mind the exact statutory language of 46 U.S.C. § 815 set forth in note 2 of the main opinion. This makes it unlawful for any shipper "knowingly and willfully, directly or indirectly, by means of false billing, false classification," or any other unfair means to obtain transportation by water of property at less than the rates otherwise applicable. Since Judge Smith and I have supported the Board's classification, we must accept as premise here that the classification attempted by the petitioner was unjust and unfairly discriminatory and we have only the further question as to petitioner's intent in seeking it. And it can hardly be disputed that petitioner knowingly, deliberately, and intentionally sought and still seeks that discriminatory classification. In fact it carefully avoided any inquiry of the carrier or the Conference as to the correct classification, a fact noted by the Board in its report. Also we may recall the difference in labeling on its bills of lading adverted to above—conduct suggesting a careful purpose to avoid the possibility of other

classification. This seems to me the very form of purposive act interdicted by the statute in its obvious intent to prohibit discriminatory rates among shippers.

It cannot be that mere lack of knowledge of the law or of any active desire to break it will excuse the prohibited discrimination; that would mean that a shipper may secure the very advantage which the law forbids by not knowing the law or even by claiming to interpret it to his own benefit. So the concurring opinion confuses and negates this statutory intent by importing into this civil case the quite different standards for a conviction of crime. We are not ruling on any criminal prosecution; if one were instituted, the charge to the jury and issues of intent and burden of proof would of course follow standards of criminal prosecution, not of civil regulatory orders. This important distinction is stated and applied to similar wording in a railroad regulatory statute in United States v. Illinois Central R. Co., 303 U.S. 239, 242–243, 58 S.Ct. 533, 82 L.Ed. 773. So in the analogous situation of a similar prohibition against less than railroad tariff rates of the Elkins Act, 49 U.S.C. § 41, the courts hold that "it was not necessary under the Elkins Act that there should be an intentional violation of the law, but that purposely doing a thing prohibited by the statute amounted to an offense." United States v. Erie R. Co., D.C.N.J., 222 F. 444, 449; United States v. General Motors Corp., 3 Cir., 226 F.2d 745; Boone v. United States, 6 Cir., 109 F.2d 560. I do not see how discrimination to favored shippers can ever be prevented if standards of criminal willfulness are to be read into this regulatory statute. Hence I dissent.

2. The opinion's striking, though fanciful, description of the tumbler's further journey into the garbage can, a picnic basket, the kitchen, or the carpenter shop suggests the difficulties of judicial expertise in fields where judges are not expert. Personally I question whether these tumblers in their "secondary stage" are ever "highly expendable" in the normal household.