## CONOVER v. MALONEY, Collector of Internal Revenue.

District Court, D. New Jersey.
Aug. 31, 1936.

Joseph C. Paul, of Newark, N. J., for relator.

John J. Quinn, U. S. Atty., of Red Bank, N. J., and Walter B. Petry, Asst. U. S. Atty., of Trenton, N. J., for defendant.

[1] No opinion for publication.

420

FORMAN, District Judge.

Relator was licensed to practice osteopathy in 1913. On October 16, 1935, he applied for, and there was issued to him by the respondent, a special tax stamp in the nature of a permit to dispense narcotics.

Thereafter respondent requested relator to surrender said permit on the ground that as an osteopath he was not qualified to hold such a permit. Relator thereupon surrendered the said stamp under protest and applied to this court for an order directing the respondent to show cause why a writ of mandamus should not issue to compel the reissuance of the permit.

Upon argument the relator stressed the case of Bruer v. Woodworth, Collector, 22 F.(2d) 577, 580, wherein United States District Judge Dawkins for the Southern District of Michigan directed such a writ in favor of an osteopath in Michigan.

In that case the court held that the law of the state in which the applicant resides must determine who are "physicians * * and other practitioners lawfully entitled to distribute, dispense, give away, or administer" narcotic drugs to patients, to whom a permit may be issued under the Harrison Narcotic Act § 1, as amended (26 U.S.C.A. § 211 (now 26 U.S.C.A. § 1383 (d). That learned court held that the Legislature of the state of Michigan "did not purport to draw any fine and narrow distinction between them (physicians and osteopaths) such as would prevent the use of any usual and recognized agency for the accomplishment of their respective ends." (Parenthesis inserted.) He granted a writ of mandamus directing the collector to grant a permit. This case was decided in 1927, and the reasoning of the court seems to be on firm foundation, and was followed in a parallel decision by Judge Tuttle of the same district in 1928 in the case of Hostetler v. Woodworth, Collector (D.C.) 28 F. (2d) 1003.

■ In New Jersey the act under which relator practiced his profession was passed in 1913 and defined osteopathy as follows: "A method or system of healing whereby displaced structure of the body are replaced in such manner by the hand or hands of the operator that the constituent elements of the diseased body may reassociate themselves for the cure of the disease." 1 Cum. Supp.Comp.Stat.1924, p. 1898, § 127—81.

In 1935 the New Jersey Legislature repealed the 1913 legislation (P.L.N.J.1935, p. 560, § 15 [N.J.St.Annual 1935, § 127—38ss]), saving persons licensed thereunder, and established a new code for examination and license to practice osteopathy. Among other things it provided: "Within the meaning of the provisions of this section the practice of osteopathy shall include the diagnosing, treating, operating or prescribing for any human disease, pain, injury, deformity, physical or mental condition; provided, however, that a license to practice osteopathy shall not permit the holder thereof to prescribe or administer drugs for internal use in the treatment of any human disease, pain, injury, deformity, physical or mental condition or to perform such surgical operations as require cutting."

This statute obviously differentiates the present application from the cases decided in the Southern District of Michigan. It definitely interdicts the prescription or administration by an osteopath of any drugs for internal use in the treatment of any human disease, pain, injury, etc.

It would appear that the New Jersey Legislature has barred the administration by osteopaths of all drugs (which would include narcotics) for internal use.

The relator has argued that the purpose of the osteopath is not to administer drugs or narcotics for internal use as treatment but only for the relief of pain. The statute, however, explicitly includes "pain." The language of the Legislature is plain and unequivocal. Under such circumstances, a strained construction is not to be applied thereto.

■ Nor is this legislation affected by the provision of the Uniform Narcotic Law of New Jersey, which contains the following definition: " 'Physician' means any person authorized by law to practice medicine in this State and any other person authorized by law to treat sick and injured human beings in this State and to use narcotic drugs in connection with such treatment." N.J. P.L.1933, c. 186, art. 1, § 1 (N.J.St.Annual 1933, § 81—163).

This act cannot and does not enlarge the 1935 legislation or, in the case of the relator, the 1913 enactment authorizing his admission.

It would seem that, if an osteopath of New Jersey is to be entitled to prescribe and administer drugs of any kind, he must obtain legislative authority so to do. Until then the respondent is justified in refusing

to grant the reissuance of a permit to the relator, and the order to show cause will be discharged.

A decree may be taken in accordance herewith.