**PERRY v. LARSON, Collector of Internal Revenue.**

**DETWILER v. SAME.**

**Nos. 9–J, 12–J.**

District Court, S. D. Florida, Jacksonville Division.

Dec. 13, 1938.

Mahon & Safer, of Jacksonville, Fla., for plaintiffs.

William A. Paisley, Asst. U. S. Dist. Atty., of Jacksonville, Fla., for defendant.

Marvin C. McIntosh, Asst. Atty. Gen., amicus curiae.

STRUM, District Judge.

In these two consolidated civil actions the plaintiffs are duly registered naturopathic physicians under Sec. 3469 et seq., C.G.L.Fla.1927. In the first, Dr. Perry as plaintiff seeks to enjoin the defendant Collector of Internal Revenue from cancelling plaintiff's registration as a physician authorized to prescribe and dispense narcotic drugs and compelling plaintiff to surrender the special narcotic stamp and order forms heretofore issued to him by the Collector under the Harrison Narcotic Act, 26 U.S.C. A. §§ 1040–1054, 1383–1391. In the second, Dr. Detwiler as plaintiff seeks to compel the defendant Collector to register him under the Harrison Narcotic Act and to issue him a special narcotic stamp and order forms, which the Collector refuses to do. In both instances the Collector is acting pursuant to a recent opinion of the Attorney General of Florida that naturopathic physicians are not authorized to prescribe

or dispense narcotic drugs under the Florida Narcotic Law.

■ Under section 1 of the Harrison Narcotic Act, 26 U.S.C.A. § 1383(d), "physicians * * * and other practitioners, lawfully entitled to distribute, dispense, give away, or administer" narcotic drugs are entitled to register with the Collector and receive from him a special stamp and order forms to be used in the purchase of narcotics. Who are such physicians or other practitioners is to be determined by the law of the State where the applicant resides. Bruer v. Woodworth, D.C., 22 F.2d 577.

The Florida Narcotic Act, Chap. 16087, Acts of 1933, Sec. 1 (Sec. 3397 (2), Perm. Supp. to Comp.Gen.Laws) provides: " 'Physician' means a person authorized by law to practice medicine in this State and any other person authorized by law to treat sick and injured human beings in this State *and* to use, mix or otherwise prepare narcotic drugs in connection with such treatment." (Italics supplied).

Sec. 3469 et seq., C.G.L.Fla.1927, provides for the licensing of practitioners of naturopathy, which is there defined to mean "the use and practice of psychological, mechanical and material health sciences to aid in purifying, cleansing and normalizing human tissues for the preservation or restoration of health according to the fundamental principles of anatomy, physiology and applied psychology, as may be required." Naturopathic practice, as there recognized, employs amongst other elements phytotherapy, which means treatment by means or with the aid of plants or remedies of botanical origin. Plaintiffs assert that phytotherapy embraces all botanical preparations and their compounds, including morphine, a derivation of opium, which in turn is a product of botanical origin, from which they conclude they are authorized to prescribe and administer morphine and other narcotics of botanical origin.

The Florida Naturopath Act (Sec. 3469, supra) clearly does not regard naturopaths as medical doctors, nor the practice of naturopathy as a practice of medicine. Per contra, it authorizes licensees thereunder to practice the art of healing only in a limited and defined field called "naturopathy," which is defined by Dorland's American Medical Dictionary (16th Ed.) as "a drugless system of therapy (treatment) by the use of physical forces, such as air, light, water, heat, massage, etc." To this definition is to be added the use of phytotherapy, as recognized by the Florida statute.

Sec. 1 of the Naturopath Act (Sec. 3469, supra), immediately after recognizing phytotherapy as a permissible method of treatment in naturopathy, concludes with the following proviso: "Provided, however, that nothing in this Chapter shall be held or construed to authorize any naturopathic physician licensed hereunder to practice materia medica or surgery * * *." As originally introduced, the word "major" preceded the word "surgery," but was stricken by amendment, so as to forbid all surgery to naturopaths.

■ Literally, materia means "medical material." To practice materia medicine is to engage in that branch of medical science which deals with drugs, their sources, preparations and uses. The above quoted proviso is an express limitation upon or qualification of the general authority of naturopaths as expressed in the general enacting clauses which precede the proviso. McDonald v. United States, 279 U.S. 12, 49 S.Ct. 218, 73 L.Ed. 582; Cox v. Hart, 260 U.S. 427, 43 S.Ct. 154, 67 L.Ed. 332; American Exp. Co. v. United States, 212 U.S. 522, 29 S.Ct. 315, 53 L.Ed. 635.

■ Though phytotherapy relates generally to healing with the aid of remedies of botanical origin, whatever is included in the practice of materia medica, that is, that branch of medical science which deals with drugs, their sources, preparations and uses, —is expressly forbidden to naturopaths by the proviso. Conover v. Maloney, D.C., 16 F.Supp. 419. Compare In re Gerber, 57 Cal.App. 141, 206 P. 1004, involving an osteopath, and note, 86 A.L.R. 626, 631. The statute authorizes naturopaths to deal with botanical remedies contemplated by phytotherapy, exclusive of those embraced in materia medica. Nor is the situation altered by the fact that narcotics are used merely as a palliative to overcome pain, rather than as a specific treatment for an ailment.

In Conover v. Maloney, supra, denying a narcotic license to an osteopath under the New Jersey law, the limiting proviso was that an osteopathic license "shall not permit the holder thereof to prescribe or administer drugs for internal use in the treatment of any human disease, pain, injury," etc. R.S.N.J.1937, 45:13–1. Though differing in language, the proviso of the Florida statute is of substantially the same

purpose and scope. Bruer v. Woodworth, D.C., 22 F.2d 577, and Hostetler v. Woodworth, D.C., 28 F.2d 1003, construing a Michigan statute, here relied upon by plaintiffs, also dealt with osteopaths. Under the Michigan statute, however, the educational and professional requirements for licensed osteopaths are much broader and exacting, and the scope of their authorized professional activities more extended, than those prescribed for Florida naturopaths. This is also true of the Washington statute construed in Waldo v. Poe, D.C., 14 F.2d 749. Moreover, the limiting proviso of the Michigan statute, Pub.Acts Mich.1903, No. 162, § 4, that an osteopath's license shall not authorize the holder "to practice medicine," the latter being defined by another statute, Comp.Laws Mich.1915, § 6732, to include the "furnishing [of] any drug, medicine, appliance, manipulation or method, or [treatment] by any therapeutic agent whatsoever," if literally construed would altogether prevent the osteopath from practicing, notwithstanding his license as an osteopathic "physician," thus creating an intolerable anomaly, which was pointed out in the first Michigan decision as one of the principal reasons for the decision. This is not true of the Florida statute. Applying the Florida statutory proviso as here construed, a broad field of practice is still open to Florida naturopaths, as defined in Sec. 3469 et seq., supra, even in the use of remedies embraced in phytotherapy. But drugs which are a part of materia medica are forbidden to the naturopath.

The view here expressed is fortified by the fact that although the Florida statute refers generally to phytotherapy as embraced within the practice of naturopathy, the course of study prescribed for naturopaths by the statute does not include a study of botanical compounds or extracts generally, nor of narcotics. This omission is in harmony with the restrictive proviso which prohibits the practice of materia medici by naturopaths. Neither in the Florida Naturopath Act nor the Narcotic Act is there specific authority for naturopaths to dispense or prescribe narcotics or other drugs. On the contrary, the proviso of the Naturopath Act expressly interdicts the practice of materia medica which embraces narcotics.

If naturopaths are to prescribe or dispense narcotic drugs in the State of Florida, they must first secure legislative authority, as they are not now within the category of a physician, as specifically defined in Sec. 1 of the Florida Narcotic Act.

Judgment in each case for the defendant Collector.